Wayne YOST, Appellant,

v.

Charles SOLANO; Kathy Hall; Officer Marti; Lieutenant Roberts; Sergeant Siefkes; E.J. Slip; James E. McKenzie; Marci Shortt; Chuck Cornwell, Appellees.

No. 90–1627.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 14, 1991.

Decided Jan. 28, 1992.

Steven M. Maun, Omaha, Neb., argued (Kirk S. Blecha, on the brief), for appellant.

Sharon M. Lindgren, Lincoln, Neb., argued, for appellees (John C. McQuinn II, on Charles Solano's brief and Yvonne E. Gates, on Kathy Hohnstein and Jim McKenzie's brief).

Before McMILLIAN, ARNOLD and LOKEN, Circuit Judges.

McMILLIAN, Circuit Judge.

Wayne Yost appeals from a final judgment entered in the United States District Court[1] for the District of Nebraska dismissing his civil rights action pursuant to 42 U.S.C. § 1983, following a trial by jury. *Yost v. Solano*, No. CV88–0–345 (D.Neb. March 23, 1990) (judgment). For reversal, Yost argues the district court erred in (1) directing a verdict in favor of Kathy Hohnstein[2] and James McKenzie on the issue of whether they acted arbitrarily and capriciously in conducting Yost's preliminary parole revocation hearing, in violation of his right to due process; (2) directing a verdict in favor of McKenzie on the issue of whether he violated Yost's due process rights by failing to consider Yost's self-defense argument in finding probable cause to revoke Yost's parole; (3) entering judgment for Charles Solano upon the jury's finding that he had probable cause to arrest Yost for second degree felony assault; and (4) entering judgment for Hohnstein and McKenzie upon the jury's finding that they did not violate Yost's due process rights by holding his preliminary parole revocation hearing fifteen days after his arrest. For the reasons discussed below, we affirm the judgment of the district court.

### Background

In the early morning hours of December 31, 1986, JoAnne Cole, a female resident of 1620 Benton Street, in Lincoln, Nebraska, placed a call to the Lincoln emergency hotline (911) reporting that she and the other occupants of the house were being threatened by individuals outside her home. The occupants of the house included Cole, Wayne Yost, Teresa Nykiel and Cole's two daughters.

Yost, believing that he and the others in the house were in danger, searched a hall closet for instruments of protection. He found a shotgun and some shells in the closet. He took the shotgun and placed two shells in his pocket. Cole attempted to convince him to put the shotgun down and in the process was struck in the face, receiving an injury to her lip.

Lincoln police officer Charles Solano, among others, was dispatched by radio to the Benton Street residence. Shortly after the police arrived, Cole, Nykiel and Cole's daughters exited through the back door. As Yost moved toward the back door, police officers moved in and subdued him. The officers handcuffed Yost and escorted him from the house to a patrol car parked outside. He was then taken to the Lancaster County jail.

Yost was charged with second degree felony assault and placed in the Lincoln County jail. Later during the morning of December 31, 1986, Cole spoke with a deputy Lancaster County attorney and told the attorney that she believed the injury to her mouth was an accident. The County attorney subsequently told Yost that charges would not be filed against him and that he would be released. While undergoing release procedures, however, Yost was informed that a parole hold had been placed on him and he was returned to jail.

Yost, formerly convicted in Texas, was at the time serving parole in Nebraska pursuant to the Interstate Compact Parole Agreement.[3] Among the conditions of his release on parole, Yost had specifically

---

1. The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska.

2. At the time of the events giving rise to this action, Kathy Hohnstein was Kathy Hall.

3. According to Yost's testimony at trial, he was on parole from a life sentence received in Texas in 1974 for stealing two horses; he had been tried and convicted as a habitual offender, having previously been convicted in Texas of stealing a horse and a horse trailer.

agreed not to "own, possess, use or sell any dangerous weapon."

Yost's parole officer, Hohnstein (formerly Hall), had ordered the hold on Yost's release. Hohnstein was on vacation from December 31, 1986, until January 2, 1987. On January 5, Hohnstein reviewed the police reports from Yost's arrest and recommended a preliminary parole revocation hearing. The next day, January 6, 1987, Yost was told that a preliminary hearing would be held to determine whether probable cause existed to revoke his parole on grounds that he possessed a firearm in violation of his parole conditions.

Hohnstein and James McKenzie, a Nebraska parole officer assigned to handling preliminary parole revocation hearings, scheduled Yost's probable cause hearing for January 15, 1987. On January 9, 1987, Hohnstein served Yost with notice of the hearing. At that time, Yost requested that Officer Solano be present at the hearing. Hohnstein served Solano with notice that same day.

McKenzie presided at the probable cause hearing on January 15, 1987. Yost was represented by counsel. Yost had arranged with a witness to have the hearing tape recorded but McKenzie ordered all witnesses and the tape recorder removed from the hearing room. Both sides presented witnesses and were given an opportunity to cross-examine witnesses. Except for providing his name and address, Yost declined to testify. Officer Solano testified but was not placed under oath, over the objection of Yost's attorney. Hohnstein declined to submit a recommendation at the time of the hearing.

McKenzie determined that probable cause existed to find that Yost had possessed a weapon in violation of his parole conditions. Hohnstein submitted her concurring recommendation on January 22, 1987. The recommendations of both McKenzie and Hohnstein were forwarded to Texas on January 28, 1987. On Febru-

ary 23, 1987, Texas issued a warrant ordering Yost held pending his transportation to Texas for a final parole revocation hearing. On March 25, 1987, Yost was released to the custody of Texas law enforcement officials.[4]

On May 11, 1988, Yost brought this action in the United States District Court for the District of Nebraska alleging violations of his constitutional rights, pursuant to 42 U.S.C. § 1983. Counsel for Yost was appointed by the district court.[5] On March 21, 1990, the case proceeded to trial. By that time, some of the original defendants and claims had been dismissed. At the close of evidence, the district court granted defense motions for directed verdict in favor of Hohnstein and McKenzie on the issue of whether they acted arbitrarily and capriciously, in violation of the Fourteenth Amendment Due Process Clause, in conducting Yost's preliminary parole revocation hearing; and in favor of McKenzie on the issue of whether he violated Yost's due process rights when he failed to consider Yost's self-defense argument in determining that there was probable cause to find a parole violation. On March 23, 1990, the jury returned a verdict for Solano on the issue of whether he had probable cause to arrest Yost, and for Hohnstein and McKenzie on the issue of whether they violated Yost's due process rights by holding his preliminary parole revocation hearing fifteen days after his arrest. The district court entered judgment dismissing Yost's action with prejudice on March 23, 1990. *Yost v. Solano*, No. CV88-0-345 (D.Neb. March 23, 1990) (judgment). Yost never moved for directed verdict, for judgment notwithstanding the verdict or for a new trial. This appeal followed.

## Discussion

### Directed Verdicts

Yost argues that the district court made two erroneous rulings on defense motions

4. According to Yost's brief on appeal, the Texas Board of Parole later revoked his parole.

5. Yost's first court-appointed counsel withdrew in December 1988. At that time, the counsel

presently representing Yost was appointed. Shortly thereafter, a Second Amended Complaint was filed.

for directed verdict. The first alleged error is the directed verdict in favor of Hohnstein and McKenzie on the issue of whether they acted arbitrarily and capriciously in conducting Yost's preliminary parole revocation hearing. The second alleged error is the directed verdict in favor of McKenzie on the issue of whether he violated Yost's due process rights when he failed to consider Yost's self-defense argument in finding probable cause to revoke Yost's parole.

Yost argues that the evidence presented at trial created genuine issues of material fact such that the discharged claims should have been submitted to the jury. On the issue of whether Hohnstein and McKenzie's actions were arbitrary and capricious, Yost emphasizes Hohnstein's testimony at trial that she automatically places a hold on parole if a parolee under her supervision is arrested for a felony, and that she routinely recommends a preliminary parole revocation hearing under such circumstances. Yost also highlights McKenzie's testimony that he has found probable cause to revoke parole in all but one of more than 250 cases in which he has served as the preliminary parole revocation hearing officer. Based upon this evidence, Yost argues that he was denied a hearing before a neutral and

detached hearing body, to which, he claims, he is entitled under *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (*Morrissey*).[6]

The district court granted the motions for directed verdict orally on the record, at the close of the evidence at trial. The court ruled that Hohnstein and McKenzie were entitled to qualified immunity for their relevant conduct in connection with the probable cause hearing.[7] As to Hohnstein, the district court held that she did not violate Yost's constitutional rights by recommending a hearing to determine whether there was probable cause of a parole violation. As to McKenzie, the district court held that there was no evidence suggesting that he was not a neutral and detached hearing officer, nor was it clearly settled at the time of the hearing that his failure to give some weight to Yost's self-defense argument violated Yost's clearly established constitutional rights.[8]

*Qualified Immunity*

Although we fail to see how the evidence identified by Yost would otherwise raise a genuine issue of material fact, we affirm the district court's rulings on motions for directed verdict because we find no error in its conclusion that Hohnstein and McKen-

6. In *Morrissey v. Brewer*, 408 U.S. 471, 486, 92 S.Ct. 2593, 2603, 33 L.Ed.2d 484 (1972) (*Morrissey*), the Supreme Court held that the hearing officer at the preliminary parole revocation hearing must be "independent," but "need not be a judicial officer." Analogizing the probable cause hearing to a proceeding at which an initial decision is made to terminate benefits, the Court suggested that the probable cause hearing officer also need not be "the traditional 'neutral and detached' officer." *Id.* The Court explained

[i]t will be sufficient, therefore, in the parole revocation context, if an evaluation of whether reasonable cause exists to believe that conditions of parole have been violated is made by someone such as a parole officer other than the one who has made the report of parole violations or has recommended revocation.

*Id.*

7. However, the district court reserved for the jury the question of whether Hohnstein and McKenzie violated Yost's right to a prompt probable cause hearing as required under *Morrissey*, 408 U.S. at 485, 92 S.Ct. at 2602.

8. In *Evans v. Dillahunty*, 711 F.2d 828, 831 (8th Cir.1983) (*Evans*), this court held that "parole officials in deciding to grant, deny, or revoke parole, perform functions comparable to those of judges," and therefore are entitled to absolute immunity. The Supreme Court has yet to decide whether such parole officials are entitled to absolute immunity under federal law. *Cleavinger v. Saxner*, 474 U.S. 193, 200–01, 106 S.Ct. 496, 500, 88 L.Ed.2d 507 (1985). In the case at bar, McKenzie did not raise the issue of whether the doctrine of absolute immunity should apply to him. The issue of whether absolute immunity should attach to a parole officer who presides at a preliminary parole revocation hearing differs from that which was presented in *Evans* because, among other reasons, the procedural safeguards afforded in the preliminary probable cause hearing are not identical to those afforded in the final revocation hearing. *See Morrissey*, 408 U.S. at 485–89, 92 S.Ct. at 2602–03. Because the district court based its decision to grant the motions for directed verdict in favor of McKenzie on grounds that his actions satisfied the standards of qualified immunity, and McKenzie has not argued that he is entitled to absolute immunity, we need not reach that issue.

zie are entitled to qualified immunity for their relevant conduct.

In *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the Supreme Court held "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Stated another way, qualified immunity is not available where "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

Our analysis, therefore, begins with a summary of the limited due process rights afforded at the preliminary parole revocation stage. In *Morrissey,* the Supreme Court explained,

> revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations.... Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions.

408 U.S. at 480, 92 S.Ct. at 2600. The Court envisioned a two-stage parole revocation process. We are concerned here with the first stage of the proceedings. In the first stage, the parolee is entitled to some minimal inquiry at or reasonably near the place of the alleged parole violation or arrest, held as promptly as is convenient after the arrest. *Id.* at 485, 92 S.Ct. at 2602; *see also Cooper v. Lockhart,* 489 F.2d 308, 312–13 (8th Cir.1973). The parolee shall be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he or she has committed a parole violation; the notice must state the parole violations which have been alleged. *Morrissey,* 408

U.S. at 486–87, 92 S.Ct. at 2603. At the preliminary hearing, the parolee is entitled to an independent hearing officer, an opportunity to appear and present evidence and a conditional right to confront adverse witnesses. *Id.* at 485–87, 92 S.Ct. at 2602–03; *Gagnon v. Scarpelli,* 411 U.S. 778, 786, 93 S.Ct. 1756, 1761, 36 L.Ed.2d 656 (1973) (*Gagnon*). Finally, the hearing officer shall prepare a written report which summarizes the evidence presented at the hearing and states whether there is probable cause to hold the parolee for the final decision of the appropriate parole board on revocation; the report shall include the hearing officer's reasons and the evidence upon which he or she relied. *Morrissey,* 408 U.S. at 487, 92 S.Ct. at 2603; *Gagnon,* 411 U.S. at 786, 93 S.Ct. at 1761.

Yost suggests that Hohnstein violated his rights by recommending a probable cause hearing without conducting a more thorough investigation of the incident that led to his arrest. Under *Morrissey,* however, the preliminary hearing itself is precisely for the purpose of conducting a prompt initial investigation. "[D]ue process would seem to require that some minimal inquiry be conducted ... in the nature of a 'preliminary hearing' to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." *Morrissey,* 408 U.S. at 485, 92 S.Ct. at 2602. To require a lengthy investigation *before* the preliminary hearing would necessarily undermine the parolee's right to have the probable cause hearing held "as promptly as convenient after the arrest." *Id.* [9] We hold that Hohnstein did not violate Yost's constitutional rights by recommending that a probable cause hearing be held on whether he had violated his parole conditions, and therefore is entitled to qualified immunity for her relevant conduct.

Similarly, we find nothing in the record to suggest that it was improper for McKenzie to preside at Yost's parole revo-

---

**9.** Yost separately claims that his due process rights under *Morrissey* were violated because

the probable cause hearing was not held promptly enough.

cation hearing. Yost contends that McKenzie was not neutral and detached. Under *Morrissey*, the presiding officer must be "someone not directly involved in the case," an "independent officer" who "need not be a judicial officer." *Id.* at 485–86, 92 S.Ct. at 2602. McKenzie satisfies this requirement.

■ Yost also contends that McKenzie violated his constitutional rights by failing to consider his legal defenses to the allegation that he had violated his parole conditions. Although McKenzie specifically included in his written report the evidence and arguments in support of Yost's claim that he possessed the gun in self-defense and defense of others, McKenzie testified at trial that he did not consider Yost's defenses in finding probable cause to believe Yost had violated his parole conditions. However, even assuming for the sake of argument that the law is clearly established that Yost ultimately should not have had his parole revoked because he possessed the shotgun in self-defense or defense of others,[10] we hold that McKenzie did not violate Yost's rights by declining to consider these defenses in making a probable cause finding.

*Morrissey* requires no more of the preliminary hearing officer than that his or her probable cause determination be based upon a reasonable belief that a parole violation has occurred. "[P]robable cause is a flexible common-sense standard. It merely requires that the facts available to the officer would 'warrant a [person] of reasonable caution in the belief' (that a parole violation occurred).... [I]t does not demand any showing that such a belief be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983) (citations omitted); *and see Morrissey*, 408 U.S. at 487, 92 S.Ct. at 2603 ("it should be remembered that this is not a final determination calling for 'formal findings of fact and conclusions of law'") (citations omitted).

Therefore, we hold that McKenzie did not violate Yost's constitutional rights by presiding at the probable cause hearing or by declining to give weight to Yost's legal defenses in determining that there was probable cause to find Yost had violated his parole conditions. McKenzie is also entitled to qualified immunity for his relevant conduct.

Yost separately argues that the jury verdict in favor of Hohnstein, McKenzie and Solano was not supported by sufficient evidence. Specifically, Yost contends that the district court should have entered judgment in his favor, contrary to the jury's findings that (1) Solano had probable cause to arrest Yost for second degree felony assault and (2) Hohnstein and McKenzie did not violate Yost's due process rights by holding his preliminary parole revocation hearing fifteen days after his arrest. Yost never raised these issues by motion for a directed verdict, motion for judgment notwithstanding the verdict or motion for a new trial. Under these circumstances, we decline to consider the sufficiency of the evidence on grounds that Yost has failed to preserve the issue for appellate review. *See Neely v. Martin K. Eby Constr. Co.*, 386 U.S. 317, 325, 87 S.Ct. 1072, 1078, 18 L.Ed.2d 75 (1967); *Cone v. West Virginia Pulp & Paper Co.*, 330 U.S. 212, 218, 67 S.Ct. 752, 756, 91 L.Ed. 849 (1947). In so doing, we do not pass on the issue of whether these claims were properly submitted to the jury.

Accordingly, for the foregoing reasons, we affirm the judgment of the district court.

---

**10.** We do not reach the issue of whether the law and facts are clearly established in this regard. We note, however, that according to Yost's brief on appeal, his parole was ultimately revoked by the Texas Board of Parole.