Caughey v. Snow                          CV-94-226-JD   04/14/97
                  UNITED STATES DISTRICT COURT FOR THE
                        DISTRICT OF NEW HAMPSHIRE

Richard Caughey

        v.                              Civil No. 94-226-JD

Robert Snow, et al.


                              O R D E R


        The plaintiff, Richard Caughey, brought this action under 42

U.S.C. § 1983 against the following defendants:  Robert Snow,

individually and as chief of police of the town of Bartlett, New

Hampshire; David Roode, individually and as an officer of the

Bartlett Police Department; the town of Bartlett; and Robert

Tetrault.  Before the court are the Bartlett defendants'[1] motion

for summary judgment (document no. 41) and defendant Tetrault's

motion for summary judgment (document no. 42).


                            Background[2]

        The plaintiff's claims arise from an incident at a bar in

_____

  [1]The Bartlett defendants are Snow, Roode, and the town of
Bartlett.

  [2]The facts in this case are intricate and hotly disputed.  As
it must, the court views all genuinely disputed material facts in
the light most favorable to the plaintiff, the party resisting
summary judgment.  See Sanchez v. Alvarado, 101 F.3d 223, 225 n.1
(1st Cir. 1996).  However, the court need not accept either
party's "conclusory allegations, improbable inferences, and
unsupported speculation."  Rivera-Cotto v. Rivera, 38 F.3d 611,
613 (1994).

which the plaintiff injured defendant Tetrault.  After the incident, the police were notified and defendant Roode responded. The police investigation by defendants Roode and Snow ultimately resulted in felony criminal charges being brought against the plaintiff.  Following the plaintiff's acquittal, he brought this action asserting that his rights were violated by the investigation and subsequent prosecution.

A.    The Incident and Its Aftermath

On January 18, 1992, at approximately 6 p.m., the plaintiff and his wife visited the Red Parka Pub in Glen, New Hampshire. They had been skiing and were joined by two friends for an après-ski.  The plaintiff recognized another patron, defendant Tetrault, and believed him to be one of a group of Tetrault family members who had assaulted and beaten the plaintiff at a post-wedding party in 1988.[3]  Defendant Tetrault and members of his group had been and continued drinking alcoholic beverages. Defendant Tetrault recognized the plaintiff, pointed him out to members of his group, and made threatening gestures toward the

---

[3]Although the party was at defendant Tetrault's home, defendant Tetrault, contrary to the plaintiff's recollection at the time of the incident, was not directly involved with administering the 1988 beating.

plaintiff.  The plaintiff was concerned for his safety.  Because he feared another attack, he told the members of his party about the prior incident and alerted some acquaintances in the bar that he might require assistance if there was trouble, but he did not leave the pub, alert its employees, or contact authorities.

At approximately 9:30 p.m., the plaintiff went to the men's room.  Defendant Tetrault got up and followed him in.  In the men's room the plaintiff, fearing that defendant Tetrault was about to attack him again, struck defendant Tetrault with enough force to knock him down.  The plaintiff left the men's room followed by defendant Tetrault.  Defendant Tetrault pushed the plaintiff, then went down the hall under his own power and fell down the three stairs leading into the main room.  At that point, the parties were separated and the police were notified.

Defendant Tetrault sustained several injuries, including a cut inside his lip, a loose tooth, and bruises on his right forehead and knee.  He also lost control of his bowels and bladder.  The plaintiff was uninjured.  At the insistence of a member of defendant Tetrault's party, the police were called and defendant Roode responded.  Later, New Hampshire State Liquor Inspector Christopher Canney, seeing defendant Roode's vehicle outside the pub, also responded.

The plaintiff was interviewed by Canney, who did not take

3

notes.  Canney's primary concern was ascertaining whether the pub had acted improperly with respect to its alcohol license.  The plaintiff admitted that he too had been drinking, though he denied being intoxicated and he did not appear to Canney to be intoxicated.  The plaintiff did not confess to any crime, but he apparently admitted, as he did at trial, that he had struck defendant Tetrault once.  When Canney submitted his report some six weeks later, however, it substantially corroborated the defendants' version of what happened that night and did not accurately reflect the plaintiff's version of events.

Defendant Tetrault was hospitalized for his injuries.  His report and written statement to defendant Roode presented a starkly different picture of the evening's events, which the plaintiff asserts is false.  He said that he had been confronted twice in the men's room by men he did not recognize prior to the attack.  The first time, the plaintiff approached him and stated that defendant Tetrault had previously wronged the plaintiff.  The second time, a different man approached defendant Tetrault and reported that defendant Tetrault had wronged the man's friend.  Defendant Tetrault denied recognizing the plaintiff until defendant Roode reminded him about the 1988 beating.

Defendant Tetrault stated that the plaintiff's attack took him by complete surprise.  He told defendant Roode that after he

4

was blind-sided by the plaintiff, the plaintiff and possibly others kicked him repeatedly while he struggled to escape down the hall and into the main room. Defendant Tetrault reported that these repeated blows caused him to lose control of his bowels and bladder. Members of defendant Tetrault's party admitted that they had been drinking, but, according to the plaintiff, the report ultimately prepared by defendant Roode under-represented the extent to which the members of defendant Tetrault's party had done so.[4] Defendant Roode did not interview any of the members of the plaintiff's party.

B.    The Investigations

Both the Bartlett defendants and defendant Tetrault investigated the events surrounding the incident. Defendant Roode called the plaintiff at his home between 2 a.m. and 3 a.m. the morning after the incident and requested that the plaintiff and his wife come by the station later that morning to answer some questions. Although defendant Roode did not order the plaintiff to appear, the plaintiff felt that he was required to do so. The plaintiff and his wife appeared at the station as requested. The plaintiff asked defendant Roode to prosecute

---

[4]Defendant Tetrault's physical examination revealed a blood alcohol level of .11 two and one-half hours after the incident.

defendant Tetrault. Defendant Roode declined, stating that the Bartlett defendants were handling defendant Tetrault's side of the matter, i.e., investigating the possibility of prosecuting the plaintiff. Defendant Roode informed the plaintiff of his <u>Miranda</u> rights and asked the plaintiff to make a statement about the previous evening's events, but the plaintiff declined to do so. The plaintiff and his wife then left the station. The Bartlett defendants conducted the remainder of their investigation without interviewing the plaintiff or any of the members of his party. At no time prior to trial did the plaintiff present to the defendants the substance of his self-defense claim.

After the assault, defendant Tetrault contacted his attorney, Edward Bradley. Bradley hired a private investigator, Joseph Thornton. Bradley and Thornton investigated both the assault and the plaintiff himself, and Bradley provided the Bartlett defendants with a report that presented only the information that tended to support defendant Tetrault's version of the incident -- that the plaintiff had committed a criminal act when he attacked defendant Tetrault. The plaintiff also claims that Bradley and Thornton prevailed upon the police impermissibly (1) to withhold information from the plaintiff; (2) to divulge confidential information about the police

investigation to Bradley and Thornton; and (3) to provide false and misleading information to the prosecutor.

The plaintiff asserts, in effect, that the Bartlett defendants and defendant Tetrault conducted an improper joint investigation, by (1) sharing confidential police information with defendant Tetrault; (2) encouraging witnesses to cooperate with defendant Tetrault's investigators; (3) withholding information from the plaintiff; and (4) spying on the plaintiff. The plaintiff also asserts that defendant Roode destroyed his investigative notes after preparing his report and conducted a generally deficient investigation by, for example, failing to interview members of the plaintiff's party.

C.  The Criminal Proceedings

Eventually, the police presented the results of their investigation to County Attorney William Paine, along with their recommendation that the plaintiff be charged with felony assault. After meeting with the plaintiff, however, Paine believed that the charge should be only a misdemeanor assault. Defendant Snow, when informed of this decision, raised the possibility that Paine might have a conflict of interest because of his relationship

with the plaintiff's brother.[5]  Despite the fact that Paine felt the relationship would present no actual conflict, he turned the case over to another county attorney to avoid any appearance of a conflict.

Subsequent prosecutors ultimate charged the plaintiff with felony assault.  The plaintiff was indicted and tried.  At trial, he asserted that he was acting in self-defense.  After less than one hour of deliberation, the jury acquitted the plaintiff on March 26, 1993.  Following his acquittal, the plaintiff brought this action, asserting that the defendants had violated his rights during his investigation and prosecution.  Defendant Tetrault brought a counterclaim, alleging that the plaintiff's acts constituted an assault and battery.  The defendants have moved for summary judgment as to all the plaintiff's claims against them.

### Discussion

The role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required."  <u>Snow v. Harnischfeger Corp.</u>, 12 F.3d 1154, 1157 (1st Cir. 1993) (quoting

---

[5]Paine and the plaintiff's brother lived four houses away from each other but were not social friends.

8

<u>Wynne v. Tufts Univ. Sch. of Medicine</u>, 976 F.2d 791, 794 (1st Cir. 1992)).  The court may only grant a motion for summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The parties seeking summary judgment bear the initial burden of establishing the lack of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Quintero de Quintero v. Aponte-Roque</u>, 974 F.2d 226, 227-28 (1st Cir. 1992).  The court must view the entire record in the light most favorable to the plaintiff, "'indulging all reasonable inferences in [his] favor.'"  <u>Mesnick v. General Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991) (quoting <u>Griggs-Ryan v. Smith</u>, 904 F.2d 112, 115 (1st Cir. 1990)).  However, once the defendants have submitted a properly supported motion for summary judgment, the plaintiff "may not rest upon mere allegation or denials of [his] pleading, but must set forth specific facts showing that there is a genuine issue for trial."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)).

I.    Probable Cause to Believe Plaintiff Had Committed a Crime

In Counts II, III, and IV, the plaintiff asserts that defendants Roode, Snow, and the town of Bartlett, respectively, deprived him of his Fourth Amendment rights by instituting a seizure of his person without probable cause.[6]  The Bartlett defendants assert that any seizure of the plaintiff comported with the requirements of the Fourth Amendment because they had probable cause to believe that he had committed a crime.[7]

"[P]robable cause is a flexible common-sense standard.  It merely requires that the facts available to the officer would 'warrant a [person] of reasonable caution in the belief' [that a crime had been committed by the suspect, not] that such a belief be correct or more likely true than false."  Texas v. Brown, 460 U.S. 730, 742 (1983).  "Probable cause exists if the facts and

_____

[6]The plaintiff asserts that defendants Roode and Snow directly violated his rights with their conduct.  He also asserts that defendant town of Bartlett placed final policymaking authority in defendant Snow, who allowed and established the inadequate policies and training responsible for the plaintiff's treatment.  In addition, in Count I, the plaintiff alleges that all of the defendants conspired to deprive him of his Fourth Amendment rights.

[7]The plaintiff claims that he was seized within the meaning of the Fourth Amendment both (1) when he reported to the police station for questioning; and (2) during the course of the defendants' investigation through trial.  The court assumes for the purposes of this motion that the plaintiff was seized within the meaning of the Fourth Amendment and focuses on the question of whether the seizure was supported by probable cause.

10

circumstances within [an individual's] knowledge and of which [the individual] had reasonably trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution to believe that a crime has been committed." Alexis v. McDonald's Restaurants, 67 F.3d 341, 351 (1st Cir. 1995) (quotation marks and citation omitted); accord D'Amour v. Burke, No. 96-194-JD, slip op. at 7 (D.N.H. Sept. 11, 1996). Probable cause is normally a question of law to be determined by the court on the basis of information known to the investigating officer. See Prokey v. Watkins, 942 F.2d 67, 73 (1st Cir. 1991). Notwithstanding that fact, the plaintiff argues that summary judgment on the issue of probable cause is not appropriate here because the factual disputes in this case make it impossible to determine as a matter of law what a reasonable person in the situation of the Bartlett defendants would have believed. See id. ("[I]f what the policeman knew prior to the arrest is genuinely in dispute, and if a reasonable officer's perception of probable cause would differ depending on the correct version, that factual dispute must be resolved by a fact finder.").

However, while there may be facts in dispute, they do not necessarily raise genuine issues of fact material to a determination of whether or not probable cause existed. The gravamen of the plaintiff's complaint is that he had a valid

11

claim of self-defense to the assault charge that should have made it clear to the defendants that there was no probable cause to believe that he had committed a crime. The plaintiff, in vain, attempts to bolster the conclusion that his self-defense claim was meritorious with both (1) the conclusion of County Attorney Paine, the initial prosecutor to consider the case, that the case warranted only a misdemeanor assault charge; and (2) the plaintiff's acquittal in less than one hour when he was tried on felony assault charges.

The fundamental flaw in the plaintiff's argument is that the merits of his self-defense claim have little or no bearing on the determination of probable cause. It is undisputed that defendant Roode arrived at the Red Parka Pub to find defendant Tetrault injured seriously enough to require hospitalization and the plaintiff, who admitted that he struck defendant Tetrault and was the only one in the men's room with him, uninjured. These undisputed facts would have given a reasonable officer in defendant Roode's position probable cause to arrest the plaintiff immediately. Even assuming that defendant Roode knew or should have known that the plaintiff thought that he was in immediate danger of being assaulted by defendant Tetrault when he launched his preemptive strike, the relative condition of the combatants provided a sufficient basis to give a reasonable person in

12

defendant Roode's position probable cause to conclude that the plaintiff had exceeded the scope of any privilege to defend himself to which he might have been entitled.[8]

Further, the plaintiff has not demonstrated that any information that materialized during the subsequent investigation was sufficient to undermine the conclusion that there was probable cause to believe that he had assaulted defendant Tetrault.[9]  See Yost v. Solano, 955 F.2d 541, 546 (8th Cir. 1992)

---

[8]N.H. Rev. Stat. Ann. § 267:4(I) (1986) provides in part:

> A person is justified in using non-deadly force upon another person in order to defend himself . . . from what he reasonably believes to be the imminent use of unlawful, non-deadly force by such other person, and he may use a degree of such force which he reasonably believes to be necessary for such purpose.  However, such force is not justifiable if:
>     . . .
>         (b) He was the initial aggressor . . . .

Defendant Roode could have had legitimate questions about, inter alia, (1) the reasonableness of the plaintiff's belief that defendant Tetrault was about to attack him; (2) the degree of force used by the plaintiff; and (3) whether or not the plaintiff was the initial aggressor.

[9]The plaintiff's allegation that the Bartlett defendants knowingly and intentionally presented false and misleading information to prosecutors might, if sufficiently supported, raise an inference that they knew probable cause was absent. However, the plaintiff has not produced any competent evidence, beyond his conclusory allegations, which could lead a reasonable fact finder to conclude that the Bartlett defendants acted in such a fashion.  Unsubstantiated allegations of improprieties in the police investigation do not advance the plaintiff's case.

(defendant did not violate plaintiff's rights by declining to consider potentially viable self-defense claim in making determination of probable cause to believe that plaintiff committed parole violation); see also Thompson v. Olson, 798 F.2d 552, 556 (1st Cir. 1986) (police officer's initial finding of probable cause justifies not only arrest, but reasonable period of continued detention for the purpose of bringing the arrestee before a magistrate, subject only to officer's continuing obligation to act reasonably). Under the circumstances, the merits of the plaintiff's self-defense claim were for the jury to decide. His acquittal, which may have been based on any of a wide variety of reasons, does not change the fact that the Bartlett defendants had reasonable grounds to believe that he assaulted defendant Tetrault. Thus, the court concludes that the Bartlett defendants had probable cause to believe that the plaintiff had committed a crime and grants summary judgment to the Bartlett defendants on Counts II, III, IV.[10]

---

[10]Having determined that the Bartlett defendants had probable cause to proceed against the plaintiff, the court also grants summary judgment to the defendants as to the plaintiff's Count I, which alleges a conspiracy to deprive the plaintiff of his Fourth Amendment rights. "[F]or a conspiracy to be actionable under section 1983 the plaintiff has to prove that 'there [has] been, besides the agreement, an actual deprivation of a right secured by the Constitution and its laws.'" Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988) (quoting Landrigan v. City of Warwick, 628 F.2d 736, 742 (1st Cir. 1980) (alteration in original));

14

II.  Malicious Prosecution

In Counts V, VI, and VII, the plaintiff alleges, inter alia, that defendants Snow, Roode, and the Town of Bartlett, respectively, committed the tort of malicious prosecution against him by causing charges to be brought against him without probable cause.  In Count VIII, the plaintiff alleges that defendant Tetrault engaged in malicious prosecution of him by instituting a criminal prosecution against him without probable cause.  The defendants claim that the malicious prosecution claims must fail because a necessary element of the tort is lack of probable cause, and they had probable cause to proceed against the plaintiff.

To prevail on a claim of malicious prosecution under New Hampshire law, a plaintiff must prove that: (1) he was subjected to a prosecution, (2) initiated by the defendant, (3) without probable cause and (4) with malice, and (5) the proceeding was resolved in the plaintiff's favor.  See Hogan v. Robert H. Irwin Motors, Inc., 121 N.H. 737, 739, 433 A.2d 1322, 1324 (1981) (quoting Stock v. Byers, 120 N.H. 844, 846, 424 A.2d 1122, 1123

accord D'Amour, No. 96-194-JD, slip op. at 12.  The court has found, supra, that the Bartlett defendants did not deprive the plaintiff of a federally protected right and the plaintiff has not alleged that defendant Tetrault deprived him of a federally protected right.  Thus, summary judgment on the conspiracy claim is warranted.

15

(1980), itself quoting <u>Robinson v. Fimbel Door Co.</u>, 113 N.H. 348, 350, 306 A.2d 768, 769 (1973)).  The court has already determined that the Bartlett defendants had probable cause to proceed against the plaintiff, <u>see</u> <u>supra</u> Part I, compelling the conclusion that the plaintiff has failed to produce sufficient evidence to establish an essential element of his claim against them.  Therefore, the court grants summary judgment to the Bartlett defendants as to the malicious prosecution claims in Counts V, VI, and VII.

However, the conclusion that the Bartlett defendants had probable cause to believe that the plaintiff had committed a crime does not compel the conclusion that defendant Tetrault also had probable cause.  The plaintiff, who bears the burden of showing lack of probable cause, asserts that defendant Tetrault lied to investigators about the extent of the beating that the plaintiff inflicted upon him and other circumstances surrounding the incident.  Defendant Tetrault claims that he was entitled to rely on the conclusion of his attorney, Bradley, that probable cause existed.

The two starkly different versions of the incident lead to a genuine issue of material fact as to whether defendant Tetrault had probable cause to believe that the plaintiff had committed a crime.  If, as the plaintiff claims, defendant Tetrault lied to

16

investigators about what happened, then a reasonable fact finder could also conclude that he lied to Bradley about what happened. Defendant Tetrault is only entitled to rely on Bradley's determination that there was probable cause if he "fully disclose[d] to [Bradley] all the facts that [were] within his information." ERG, Inc. v. Barnes, 137 N.H. 186, 192, 624 A.2d 555, 559 (1993) (quoting Restatement (Second) of Torts, § 666 cmt. f (1976)). Therefore, the plaintiff may be able to prove a set of facts at trial from which a reasonable jury could conclude that defendant Tetrault lacked probable cause to believe that the plaintiff committed a crime. Having determined that a genuine issue of material fact exists with respect to the issue of whether defendant Tetrault had probable cause to believe that the plaintiff had committed a crime, the court denies summary judgment to defendant Tetrault with respect to the plaintiff's claim of malicious prosecution in Count VIII.

III. Negligence

In Counts V, VI, and VII, the plaintiff alleges that defendants Snow, Roode, and the Town of Bartlett, respectively, were negligent in their handling of his case. The plaintiff asserts, inter alia, that the Bartlett defendants owed him a duty, which they breached, not to provide defendant Tetrault with

17

confidential information about their investigation.  The
plaintiff has supported this allegation only with the trial
testimony of County Attorney Paine, who stated that it was
against his policy to disseminate confidential materials from an
ongoing criminal investigation to private attorneys contemplating
civil action such as Bradley.  See Plaintiff's Joint Memorandum
of Law in Opposition to Motions for Summary Judgment by Robert
Tetrault and the Bartlett Defendants, Ex. 20 at 20.  However,
Paine's testimony noted that Rule 3.6 of the Rules of
Professional Conduct, in part the source of his policy, does not
apply "to any police officer."  Id.  Based on this evidence, no
reasonable fact finder could conclude that the Bartlett
defendants owed the plaintiff a duty which their conduct
breached.

The plaintiff also argues that the Bartlett defendants
conducted a negligent investigation by failing (1) to interview
certain witnesses, and (2) to ascertain that defendant Tetrault
and witnesses favorable to him had provided them with inaccurate
and misleading information.  Even assuming that the Bartlett
defendants breached a duty they owed to the plaintiff by their
conduct of the investigation, the plaintiff cannot show that this
breach caused the harm he suffered.  Even taking the plaintiff's
claims in the light most favorable to him, the most a properly

18

conducted investigation would have uncovered was the fact that the plaintiff had a potentially valid self-defense claim. However, as noted supra, such an investigation would not have undermined the prosecution's conclusion that there was probable cause for charging the plaintiff with a crime. Because the plaintiff's evidence does not permit the inference that but for the negligent investigation he would not have been prosecuted, summary judgment is warranted on this claim.

Thus, because the plaintiff has failed to provide any evidence to support the duty and causation elements of his claim of negligence, the court grants summary judgment to the Bartlett defendants on the plaintiff's negligence claims in Counts V, VI, and VII.


Conclusion

For the reasons stated above, the Bartlett defendants' motion for summary judgment (document no. 41) is granted. Defendant Tetrault's motion for summary judgment (document no.

19

42) is granted in part and denied in part.  The clerk is ordered to schedule a status conference for 11 a.m. on May 29, 1997.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

April 14, 1997

cc:  Dennis T. Ducharme, Esquire
     Robert E. McDaniel, Esquire
     Peter G. Beeson, Esquire