Justice Robinson, for the Court.
 

 The petitioner, Leonard Jefferson, appeals
 
 [1]
 
 from the June 2, 2015 denial of his application for postconviction relief in Providence County Superior Court. He contends before this Court that the hearing justice erred in denying his application for postconviction relief because, in petitioner's view, the
 
 ex post facto
 
 clause of the United States Constitution was violated when his parole was revoked and he was denied the possibility of parole in the future pursuant to G.L. 1956 § 13-8-14(b). He further avers that the separation of powers doctrine as well as his right to be free from double jeopardy were also violated when he was denied the possibility of parole; and he further argues that his due process rights were violated when his parole was revoked.
 

 For the reasons set forth in this opinion, we vacate the judgment of the Superior Court.
 

 I
 

 Facts and Travel
 

 On October 4, 1974, petitioner was convicted in Providence County Superior Court of murder in violation of G.L. 1956 § 11-23-1. He was sentenced to life imprisonment. This Court affirmed his conviction in
 
 State v. Jefferson
 
 ,
 
 116 R.I. 124
 
 ,
 
 353 A.2d 190
 
 (1976). We refer the interested reader to that opinion for a detailed recitation of the facts underlying Mr. Jefferson's original murder conviction. We will restrict ourselves to only those facts which are relevant to the case before us. In setting forth said facts, we rely primarily on Mr. Jefferson's application for postconviction relief and the attachments thereto.
 

 On June 2, 1976, after Mr. Jefferson's 1974 murder conviction, the General Assembly amended the parole statutes to include the following language, which remains in the current version of the statute:
 

 "[I]n the case of a prisoner sentenced to imprisonment for life who is released on parole and who is subsequently convicted of a crime of violence as defined in section 11-47-2,
 
 [
 

 2
 

 ]
 
 said conviction shall constitute an automatic revocation of parole
 and the prisoner shall not be eligible for parole thereafter." P.L. 1976 ch. 223 § 2;
 
 see also
 
 § 13-8-14(b).
 

 Subsequently, in January of 1986, Mr. Jefferson was granted parole. He was thereafter arrested in Pennsylvania and, on May 18, 1994, was convicted in that commonwealth of one count of aggravated assault, for which he served a twenty-year prison term.
 

 On December 13 and December 29, 1993, after Mr. Jefferson's Pennsylvania arrest, but before his conviction, a preliminary parole revocation hearing was held in Pennsylvania with respect to determining whether or not, as a result of his Pennsylvania arrest, there was probable cause that he had violated his parole related to his Rhode Island sentence. Thereafter, on November 10, 1994, after Mr. Jefferson's Pennsylvania conviction and while he was serving his sentence in Pennsylvania, the Rhode Island Parole Board held a final parole revocation hearing and voted to revoke his parole and indicated, in the minutes from that hearing, that he would "no longer be eligible for parole * * *." In November of 2013, upon completion of his prison term in Pennsylvania, petitioner was transported to the Adult Correctional Institutions in Rhode Island. On April 14, 2014, Mr. Jefferson appeared before the Parole Board for what appears to have been a second final parole revocation hearing; there is no indication in the record that he was represented by counsel at that time. The Parole Board voted to affirm the above-referenced revocation of Mr. Jefferson's parole and, according to his application for postconviction relief presently at issue, informed him that he "is and forever will remain ineligible for parole-consideration." Mr. Jefferson represents, in his application for postconviction relief, and the state does not contest, that the basis of the Parole Board's decision that he will remain ineligible for parole was the mandate contained in § 13-8-14(b).
 

 Mr. Jefferson filed the instant
 
 pro se
 
 application for postconviction relief on July 1, 2014. He alleged therein that the Parole Board's reliance on § 13-8-14(b) was "improper and unconstitutional * * *." Specifically, he contended that he had not been convicted of any offense listed under G.L. 1956 § 11-47-2. He further contended that his due process rights under
 
 Morrissey v. Brewer
 
 ,
 
 408 U.S. 471
 
 ,
 
 92 S.Ct. 2593
 
 ,
 
 33 L.Ed.2d 484
 
 (1972), were violated during the revocation proceedings.
 

 On April 1, 2015, Mr. Jefferson's court-appointed counsel (having entered his appearance on October 1, 2014) filed both a motion to withdraw as counsel
 
 [3]
 
 and a memorandum in support of that motion pursuant to this Court's opinion in
 
 Shatney v. State
 
 ,
 
 755 A.2d 130
 
 (R.I. 2000) ;
 
 [4]
 
 the grounds for the motion to withdraw were that the issues raised in petitioner's application for postconviction relief were "wholly frivolous, and not supported by existing law, or by a good faith basis for the reversal,
 extension, or modification of existing law * * *." On April 14, 2015, a hearing was held on court-appointed counsel's motion to withdraw, in the course of which hearing the hearing justice granted the motion. Subsequently, on April 29, 2015, Mr. Jefferson filed an "Objection to Defense Counsel's Shatney Memorandum." On June 2, 2015, a second hearing was conducted, at which Mr. Jefferson appeared
 
 pro se
 
 ; at the close of that hearing, Mr. Jefferson's application for postconviction relief was denied. He filed a notice of appeal on June 19, 2015.
 

 II
 

 Standard of Review
 

 When passing on a hearing justice's denial of an application for postconviction relief, "this Court accords great deference to the hearing justice's findings of fact."
 
 Lynch v. State
 
 ,
 
 13 A.3d 603
 
 , 605 (R.I. 2011). As such, "[t]his Court will uphold the decision absent clear error or a determination that the hearing justice misconceived or overlooked material evidence."
 

 Id.
 

 (internal quotation marks omitted). That being said, we will review "de novo any questions of law or fact pertaining to an alleged violation of an applicant's constitutional rights."
 

 Id.
 

 III
 

 Analysis
 

 We need not address each of Mr. Jefferson's contentions before this Court due to the fact that, in our judgment, it was error to deny him representation of counsel and his "opportunity to be heard in person" when the Parole Board voted to revoke his parole on November 10, 1994.
 
 Morrissey
 
 ,
 
 408 U.S. at 489
 
 ,
 
 92 S.Ct. 2593
 
 . Moreover, in our opinion, his right to counsel under the specific circumstances of this case was also not provided to him at the April 14, 2014 hearing before the Parole Board, at which the Parole Board affirmed the denial of his parole.
 
 [5]
 

 The United States Supreme Court in
 
 Morrissey
 
 ,
 
 408 U.S. at 489
 
 ,
 
 92 S.Ct. 2593
 
 , set forth what is minimally necessary to comply with the requirements of the due process clause of the Fourteenth Amendment of the United States Constitution in the context of parole revocation. For the purposes of this opinion, we will focus only on the requirements set forth therein with respect to the final revocation hearing, as those are the pertinent requirements for this case.
 
 [6]
 
 It appears from the facts of this case that, after Mr. Jefferson's preliminary
 parole revocation hearing, which took place on December 13 and December 29, 1993, he was in essence given two final parole revocation hearings on November 10, 1994 and April 14, 2014. The United States Supreme Court in
 
 Morrissey
 
 stated that, for a final parole revocation hearing, the minimum requirements of due process are as follows:
 

 "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole."
 
 Morrissey
 
 ,
 
 408 U.S. at 489
 
 ,
 
 92 S.Ct. 2593
 
 .
 

 It necessarily follows that Mr. Jefferson was entitled to each of the just-quoted requirements at his final parole revocation hearings.
 

 However, in
 
 Morrissey
 
 , the Supreme Court specifically opted not to pass on "the question whether the parolee is entitled to the assistance of retained counsel or to appointed counsel if he is indigent."
 

 Id.
 

 The United States Supreme Court has never held that a parolee is entitled in every case to representation by an attorney at a final parole revocation hearing; rather, that Court has held that "the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system."
 
 Gagnon v. Scarpelli
 
 ,
 
 411 U.S. 778
 
 , 790,
 
 93 S.Ct. 1756
 
 ,
 
 36 L.Ed.2d 656
 
 (1973).
 
 [7]
 
 The Supreme Court went on to explain that "[a]lthough the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness-the touchstone of due process-will require that the State provide at its expense counsel for indigent probationers or parolees."
 

 Id.
 

 The Supreme Court further stated, in
 
 Gagnon
 
 , that:
 

 "Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on
 a timely and colorable claim * * * that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present."
 
 Gagnon
 
 ,
 
 411 U.S. at 790
 
 ,
 
 93 S.Ct. 1756
 
 ;
 
 see also
 

 United States v. Dodson
 
 ,
 
 25 F.3d 385
 
 , 388-89 (6th Cir. 1994) ;
 
 Gibbs v. State
 
 ,
 
 760 A.2d 541
 
 , 543 (Del. 2000) ;
 
 Walker v. Forbes
 
 ,
 
 292 Va. 417
 
 ,
 
 790 S.E.2d 240
 
 , 244 (2016).
 

 We consider to be noteworthy the United States Supreme Court's explicit acknowledgment in
 
 Gagnon
 
 that there will arise some cases whose complexity calls for providing counsel to a parolee at a parole revocation hearing. In our judgment, the instant case is on its face one of particular factual and legal complexity, and it is our view that in this case petitioner should be represented by counsel before the Parole Board if he so chooses.
 
 See
 

 Gagnon
 
 ,
 
 411 U.S. at 789
 
 ,
 
 93 S.Ct. 1756
 
 ("The need for counsel at revocation hearings derives, not from the invariable attributes of those hearings, but rather from
 
 the peculiarities of particular cases
 
 .") (emphasis added). We expressly refrain from formulating any broader rule in these premises; we restrict ourselves to the case at hand. In support of our conclusion, we note that, according to the several letters Mr. Jefferson attached to his "Objection to Defense Counsel's Shatney Memorandum," he specifically requested counsel, in writing and on more than one occasion, prior to the April 14, 2014 hearing before the Parole Board. In support of his request for an attorney, Mr. Jefferson cited the fact that he was contending that he had been "wrongly convicted of [the] 'trigger' offense;" he further cited the "complex issues involved" in the case, and he made specific mention of the applicability of § 13-8-14(b).
 

 It is clear from the record that, when the Parole Board first revoked Mr. Jefferson's parole on November 10, 1994, at his first final parole revocation hearing, he was not "heard in person" because he was incarcerated in Pennsylvania at the time, nor was he represented by counsel in connection with his parole revocation.
 
 Morrissey
 
 ,
 
 408 U.S. at 489
 
 ,
 
 92 S.Ct. 2593
 
 . Consequently, it does not appear that Mr. Jefferson's due process rights, detailed in
 
 Morrissey
 
 , and his right to an attorney, recognized in
 
 Gagnon
 
 , were complied with at the time of the initial revocation of his parole by the Rhode Island Parole Board in 1994. Moreover, after Mr. Jefferson completed his sentence in Pennsylvania and was transported back to Rhode Island, he appeared before the Parole Board for what appears to have been a second final parole revocation hearing, at which appearance the Parole Board affirmed the revocation of his parole. There is no indication that he was represented by counsel at that hearing despite his numerous requests for counsel. It was error for the Parole Board to deny Mr. Jefferson counsel at the April 14, 2014 hearing.
 

 Without addressing the constitutionality of § 13-8-14(b) as applied to Mr. Jefferson, we note that the applicability of § 13-8-14(b) to Mr. Jefferson turns in part on whether the offense for which he was convicted in Pennsylvania (aggravated assault) constitutes "a crime of violence as defined in § 11-47-2." The consequences of this determination are obviously severe-
 
 viz.
 
 , whether Mr. Jefferson will ever be eligible for parole or whether he must serve his life sentence without the possibility of parole. Under these circumstances, we are of the opinion that fundamental fairness and due process require that counsel be provided to him. We deem it error, therefore, for the Parole Board to
 have denied him counsel at the November 10, 1994 hearing and the April 14, 2014 hearing.
 

 Accordingly, we remand this case to the Superior Court with instructions that it remand the case to the Parole Board to conduct a new parole revocation hearing.
 

 IV
 

 Conclusion
 

 For the reasons stated herein and due to the especially complex nature of this case, we vacate the judgment of the Superior Court; and we remand the record to that tribunal with instructions that it remand the case to the Parole Board to conduct a new parole revocation hearing which complies with the requirements of due process and the right to be represented by counsel if Mr. Jefferson so chooses.
 

 The General Assembly has amended G.L. 1956 § 10-9.1-9 so as to require a party aggrieved by a final judgment entered in a postconviction relief proceeding to seek review by filing a petition for a writ of certiorari with this Court.
 
 See
 
 P.L. 2015, ch. 91, § 1; P.L. 2015, ch. 92, § 1. That amendment went into effect on June 19, 2015. The notice of appeal in this case was docketed in the Superior Court on June 19, 2015. To the extent that it may be necessary, we are hereby treating the instant appeal as a petition for the issuance of a writ of certiorari, and we are granting that petition.
 

 General Laws 1956 § 11-47-2 provides in pertinent part as follows:
 

 " 'Crime of violence' means and includes any of the following crimes or an attempt to commit any of them: murder, manslaughter, rape, first or second degree sexual assault, first or second degree child molestation, kidnapping, first and second degree arson, mayhem, robbery, burglary, breaking and entering, any felony violation involving the illegal manufacture, sale, or delivery of a controlled substance, or possession with intent to manufacture, sell, or deliver a controlled substance classified in schedule I or schedule II of § 21-28-2.08, any violation of § 21-28-4.01.1 or 21-28-4.01.2 or conspiracy to commit any violation of these statutes, assault with a dangerous weapon, assault or battery involving grave bodily injury, and/or assault with intent to commit any offense punishable as a felony; upon any conviction of an offense punishable as a felony offense under § 12-29-5."
 

 The docket sheet reflects the fact that a motion to withdraw was filed on April 1, 2015, but only a copy of the memorandum in support of the motion is contained in the record.
 

 We take this opportunity to note our continuing concern with respect to the way our decision in
 
 Shatney v. State
 
 ,
 
 755 A.2d 130
 
 (R.I. 2000), has been implemented. In our judgment, too often court-appointed counsel are overly ready to simply file a motion to withdraw and are not providing applicants for postconviction relief the kind of inquiry into the record, research of potential grounds for the grant of postconviction relief, and zealous representation to which they are entitled. While we hold the issue in abeyance at this time, we have grave doubts as to the continuation of the procedure provided for in
 
 Shatney
 
 . We tend to think that, as it has been administered, it has become untenable.
 

 We note, initially, that there is no issue as to waiver with respect to Mr. Jefferson's contention that his due process rights were violated. He clearly raised the violation of his due process rights in his application for postconviction relief, and he specifically cited
 
 Morrissey v. Brewer
 
 ,
 
 408 U.S. 471
 
 ,
 
 92 S.Ct. 2593
 
 ,
 
 33 L.Ed.2d 484
 
 (1972), in that same application.
 

 We deem it prudent to add that, in our judgment, Mr. Jefferson's contention in his
 
 pro se
 
 application for postconviction relief that his constitutional rights were violated, and his mention of due process specifically, are sufficient, on the specific facts of the instant case, to preserve his contention that the
 
 ex post facto
 
 clause of the United States Constitution was violated when his parole was revoked and he was denied the possibility of parole in the future. We take no position on the merits of that contention at this time.
 

 The United States Supreme Court in
 
 Morrissey
 
 ,
 
 408 U.S. at 485-87
 
 ,
 
 92 S.Ct. 2593
 
 , also set forth the requirement of a preliminary hearing and specific details as to the requirements of due process at such a hearing. We acknowledge that, in his
 
 pro se
 
 application for postconviction relief, Mr. Jefferson referenced what he contended were errors at his preliminary hearing, which took place on December 13 and December 29, 1993 in Pennsylvania. However, before this Court he restricts his argument to the final parole revocation hearings, and we will likewise restrict our review to those hearings.
 
 See
 

 Rice v. State
 
 ,
 
 38 A.3d 9
 
 , 16 n.10 (R.I. 2012) ("We note that this Court will deem as waived issues that the appellant fails to brief * * *.").
 

 Subsequent to the Supreme Court's opinion in
 
 Gagnon v. Scarpelli
 
 ,
 
 411 U.S. 778
 
 ,
 
 93 S.Ct. 1756
 
 ,
 
 36 L.Ed.2d 656
 
 (1973), Congress passed the United States Parole Commission and Reorganization Act, Pub. L. No. 94-233,
 
 90 Stat. 228
 
 (1976), which requires representation by an attorney at a parole revocation hearing if the parolee so desires.
 
 See
 

 Jones v. State
 
 ,
 
 560 A.2d 1056
 
 , 1057 n.1 (Del. 1989). Despite the passage of said act,
 
 Gagnon
 
 remains good law with respect to whether or not the United States Constitution requires the opportunity to be represented by counsel at a final parole revocation hearing. It is further noteworthy that the Supreme Court has reaffirmed the holding in
 
 Gagnon
 
 in more recent cases.
 
 See
 

 Turner v. Rogers
 
 ,
 
 564 U.S. 431
 
 , 443,
 
 131 S.Ct. 2507
 
 ,
 
 180 L.Ed.2d 452
 
 (2011) ("[T]he Court has held that a criminal offender facing revocation of probation and imprisonment does
 
 not
 
 ordinarily have a right to counsel at a probation revocation hearing.") (emphasis in original) (citing
 
 Gagnon
 
 ,
 
 411 U.S. at 790
 
 ,
 
 93 S.Ct. 1756
 
 );
 
 Black v. Romano
 
 ,
 
 471 U.S. 606
 
 , 612,
 
 105 S.Ct. 2254
 
 ,
 
 85 L.Ed.2d 636
 
 (1985) ("[T]he probationer has a right to the assistance of counsel in some circumstances.") (citing
 
 Gagnon
 
 ,
 
 411 U.S. at 790
 
 ,
 
 93 S.Ct. 1756
 
 ).