# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-3447

_____

Stephanie Gasca; Mildred Curren; Kenneth Hemphill; Jesse Neely; Amber Wyse; Timothy Gallagher; Solomon Warren

*Plaintiffs - Appellees*

v.

Anne L. Precythe, in her official capacity, Director of the Missouri Department of Corrections; Kenneth Jones, in his official capacity, Chairman of the Missouri Division of Probation and Parole; Jennifer Zamkus, in her official capacity, Vice Chair of the Missouri Board of Probation and Parole; Jim Wells, in his official capacity, Member of the Missouri Board of Probation and Parole; Martin Rucker, in his official capacity, Member of the Missouri Board of Probation and Parole; Ellis McSwain, in his official capacity, Member of the Missouri Board of Probation and Parole; Gary Dusenberg, in his official capacity, Member of the Missouri Board of Probation and Parole; Paul Fitzwater, in his official capacity, Member of the Missouri Board of Probation and Parole

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: November 18, 2021
Filed: October 5, 2023

_____

Before COLLOTON, GRASZ, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Parolees sued the Missouri Department of Corrections (MDOC), claiming that its parole revocation system violated the Due Process Clause. Recognizing the system's flaws, MDOC rewrote its policies and consented to summary judgment. Later, MDOC moved to dismiss for failure to join a required party—the Missouri Public Defender Commission (Commission). The district court denied MDOC's motion and held a hearing to determine whether MDOC's revised policies satisfied due process. Finding additional problems, the district court issued a remedy order[1] instructing MDOC to make changes. Because the district court abused its discretion in ordering some of the remedies, we affirm in part, reverse in part, and remand.

I.

We first address the parts of the district court's remedy order related to *Morrissey v. Brewer*, 408 U.S. 471 (1972), which established the procedures states must follow before revoking someone's parole. For each challenged remedy, we review *de novo* the district court's conclusion that MDOC violated the Constitution. *See Hayes v. Metro. Prop. & Cas. Ins. Co.*, 908 F.3d 370, 374 (8th Cir. 2018). If there was a violation, we then review whether the district court's remedy was an abuse of discretion. *Triple Five of Minn., Inc. v. Simon*, 404 F.3d 1088, 1095 (8th Cir. 2005). A "remedy does not exceed the violation if . . . [it] is tailored to cure the condition that offends the Constitution." *Milliken v. Bradley*, 433 U.S. 267, 282 (1977). But a remedy goes too far if it "eliminat[es] a condition that does not violate the Constitution or does not flow from such a violation." *Id.*

---

[1]Our analysis below corresponds to the challenged portions of the district court's remedy order.

-2-

## A. Notice & Form Content (Remedies 1, 3 & 4)

The state must notify parolees of alleged violations at different stages of the parole revocation process. *Morrissey*, 408 U.S. at 486–87, 489. This includes before the preliminary hearing, which involves a probable cause determination about whether a violation occurred. *Id.* at 486–87. MDOC does not always give parolees this notice, so its practices violate *Morrissey*. *See id.* at 487. To remedy this violation, the district court ordered MDOC to comply with its notice policies and to document its compliance. The remedy is tailored to the violation and so was not an abuse of discretion.

*Morrissey* also requires the state to give parolees "written notice of the claimed violations of parole" at the revocation hearing, which involves a final determination about whether there was a violation. *Id.* at 489. MDOC uses a revocation hearing form, which parolees can fill out to waive or request hearings. But the form does not have space for parole officers to list alleged violations. To fix this, the district court ordered MDOC to add a section on the form for alleged violations. So far, so good. But the district court also ordered MDOC to amend its form to give parolees an option to retain their own counsel at hearings. A parolee has a constitutional right to be represented by counsel at a parole hearing only in certain situations. *See Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973). So the district court's remedy was overbroad. It would be sufficient for the State to clarify on its form that the parolee may request to be screened for eligibility for state-funded counsel or waive the right to *state-funded* counsel. Given that the form already gives notice that the State allows a parolee to retain counsel for a hearing, there would then be no need for another option on the form about retained counsel.

## B. Disclosure of Evidence (Remedy 8)

The state must disclose adverse evidence at the revocation hearing stage. *Morrissey*, 408 U.S. at 489. MDOC does not do this.[2] To remedy this violation, the district court ordered MDOC to disclose adverse evidence at least five days before a revocation hearing. MDOC argues that five days goes beyond what is necessary to correct the violation. We disagree. Given that five days' lead time does not overburden MDOC and gives parolees time to prepare, the district court did not abuse its discretion. *Cf. id.* at 483 (recognizing a parolee's interest in procedure without overburdening the state).

## C. Timeliness of Hearings (Remedy 9)

The state must hold a revocation hearing "within a reasonable time after the parolee is taken into custody." *Id.* at 488. Although "[t]he determination of reasonableness must, to some degree, turn on the circumstance[s] of each case," we have allowed delays of even 90 days. *Creech v. U.S. Bd. of Parole*, 538 F.2d 205, 208 (8th Cir. 1976). MDOC has a policy requiring a revocation hearing within 30 days, but it does not always follow that policy. The district court ordered MDOC to follow its 30-day policy. But because we have held that longer delays may be reasonable in some cases, the remedy is not tailored to the violation and was an abuse of discretion.

---

[2]This finding was not clearly erroneous. An expert witness testified that evidence was not being provided. Parolees also testified that they did not receive police reports. MDOC says that parolees get evidence about adverse witnesses, but that is only one type of adverse evidence. And parole officers' summary reports do not satisfy *Morrissey*'s disclosure requirement. *See Belk v. Purkett*, 15 F.3d 803, 812 (8th Cir. 1994).

## D. Revocation Decisions (Remedies 10, 11 & 12)

The state must provide parolees with "a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." *Morrissey*, 408 U.S. at 489. MDOC's policy is to notify parolees about revocation decisions, but the policy and MDOC's practices fall short of what is constitutionally required.

First, MDOC's policy is inconsistently implemented. To fix this, the district court ordered MDOC to follow its policy, which requires MDOC to deliver a notification to parolees within 10 days of the date listed on the notice. Given that the district court pulled the 10-day figure from MDOC's policy, we see no reason to believe that this timeframe is unduly burdensome.

Second, MDOC has no policy requiring written notice of the evidence relied on and reasons for revoking parole. *See id.* The district court fixed this by requiring MDOC's notices to outline the evidence relied on, mitigating circumstances considered, and reasons for revocation. MDOC argues that it was an abuse of discretion to require a written statement even when a parolee waives a revocation hearing. But because some revocation decisions are appealable even if a hearing is waived, it was not an abuse of discretion to require MDOC to provide a written statement to create an adequate basis for review.[3] At the same time, the district court abused its discretion by requiring MDOC to explain the mitigating circumstances considered. An explanation of the evidence relied on and reasons for revoking parole will capture any mitigating circumstances that played a role in MDOC's decision, so requiring additional discussion about the mitigating circumstances

---

[3]MDOC argues that requiring an explanation even when a hearing is waived is not justified because the other *Morrissey* requirements provide an "adequate basis for review" of the revocation decision. *Cf. Black v. Romano*, 471 U.S. 606, 613–14 (1985) (explaining that "when other procedural safeguards have minimized the risk of unfairness, there is a diminished justification for requiring a judge to explain his rulings" (citation omitted)). But given that MDOC has not met *Morrissey*'s written statement requirement, we have no basis to consider whether meeting this requirement would render further explanation unnecessary.

MDOC considered is unduly burdensome.  *Cf. Black v. Romano*, 471 U.S. 606, 613 (1985) (declining to impose a "requirement that the factfinder elaborate upon the reasons for a course not taken" because it "would unduly burden the revocation proceeding").

Finally, the district court ordered MDOC to make revocation decisions within a reasonable time "to give meaning to the policies governing parolees' receipt of revocation decisions and deadlines for filing appeals."  By crafting a remedy without first finding a constitutional violation, the district court abused its discretion.  And in any event, a delayed revocation decision would not affect a parolee's appeal rights.

E. Appeal Process (Remedies 20 & 21)

There is no established right to appeal parole revocation decisions.  But when a state creates an appeal process, that process must satisfy due process.  *Evitts v. Lucey*, 469 U.S. 387, 393 (1985).  In Missouri, parolees must appeal within 30 days of receiving notice of a revocation decision.  But some parolees encountered delays in getting appeal forms, and others never got their forms at all.  This practice violates due process because it prevents parolees from exercising their appeal rights.  To remedy this violation, the district court ordered MDOC to make an appeal form available to parolees whose decisions are appealable on the day they receive their revocation decision.  This remedy did not exceed the scope of the violation and so was not an abuse of discretion.

The district court, relying on *Morrissey*, also ordered MDOC to explain why a parolee's appeal was denied.  But *Morrissey* does not address appeals of revocation decisions and so does not speak to any required explanation for a denial.  And no party points us to any authority setting out such a right.  This remedy is not tied to a constitutional violation and was an abuse of discretion.

II.

We next review the parts of the district court's remedy order related to *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), which addressed the right to counsel at revocation hearings.

A. Screening for Counsel (Remedy 13)

*Gagnon* requires MDOC, which administers the parole system, to make "the decision as to the need for counsel." *Id.* at 790. MDOC uses screening sheets to help determine whether someone is eligible for counsel. If a sheet indicates that someone is eligible, a parole officer is supposed to help the parolee complete an application for appointed counsel. The application is then faxed to the Commission. But again, MDOC's policy was not its practice. Some parole officers thought it was the Commission's job to decide whether the parolee was eligible for counsel, so they would fax the screening sheet over without first making an eligibility determination.

The district court directed MDOC to amend the screening sheet to provide parolees space to explain their innocence and give parolees an opportunity to offer any mitigating circumstances. The district court also ordered MDOC to add questions to help parole officers determine whether the state should appoint counsel. Because these remedies did not exceed the scope of the violation, they were not abuses of discretion. *See id.* at 790–91.

B. Counsel Ineligibility Decisions (Remedy 17)

*Gagnon* says that "[i]n every case in which" a parolee's request for counsel is denied, "the grounds for refusal should be stated succinctly in the record." 411 U.S. at 791. MDOC does not have a procedure for recording denials of counsel or notifying parolees. To remedy this, the district court ordered MDOC to document denials and give parolees written decisions explaining the grounds for refusal. But this remedy exceeds the violation: *Gagnon* requires only a succinct statement "in

-7-

the record." The requirement to give parolees a written decision in every case was thus overbroad and an abuse of discretion.

## C. Appointment of Counsel (Remedies 18 & 19)

Conducting revocation hearings without required counsel violates due process. *Id.* at 790. The district court ordered MDOC not to hold revocation hearings and incarcerate parolees without required counsel. This goes no further than necessary, so it was not an abuse of discretion.

The district court also ordered MDOC to create a policy for appointing eligible parolees state-funded counsel. MDOC says that it is now forced to appoint counsel, which it cannot do under state law. But we do not read the remedy so broadly. The remedy targets MDOC's practice of faxing eligibility forms to the Commission and leaving the Commission to determine whether counsel was required. Under *Gagnon*, MDOC is the one responsible "for administering the probation and parole system" and making "the decision as to the need for counsel." *Id.* at 790. The district court's approach left the decision of whether counsel should be appointed to MDOC and the method for doing so to the state and was not an abuse of discretion.

## III.

We now turn to the district court's denial of MDOC's motion to dismiss for failure to join a required party, which we review *de novo*. *Cedar Rapids Bank & Tr. Co. v. Mako One Corp.*, 919 F.3d 529, 534 (8th Cir. 2019).

Federal Rule of Civil Procedure 19(a)(1)(A) requires the joinder of an absent party if "the court cannot accord complete relief among existing parties." MDOC says that Plaintiffs were required to join the Commission because the Commission has exclusive authority to appoint counsel under state law. Without the Commission's cooperation, MDOC says it cannot comply with the district court's orders to appoint counsel and refrain from holding revocation hearings without

required counsel. MDOC's argument is misplaced. As we said, the district court did not order MDOC to appoint counsel, and MDOC does not need another agency's cooperation to refrain from holding illegal revocation hearings. Because the Commission is not a required party, the district court did not err in denying MDOC's motion to dismiss.

IV.

For these reasons, we affirm in part, reverse in part, and remand.

GRASZ, Circuit Judge, concurring in part and dissenting in part.

States, not judges, draft the "code of procedure" for parole revocations. *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972). And states have a vital role in setting the guidelines for the appointment of counsel for parolees. *See Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973). The court holds that some of the district court's remedies exceed what *Morrissey* and *Gagnon* permit. I agree and join in reversing those remedies. But because I conclude additional remedies exceed the district court's discretion, I respectfully dissent.

A restrained federal judiciary was a key selling point of our Constitution. When the judiciary is properly restrained, "liberty can have nothing to fear from the judiciary alone, but would have everything to fear" from the judiciary's union with policymaking. The Federalist No. 78, at 392–93 (Alexander Hamilton) (Yale ed., 2009). If a state's policy deprives parolees of due process rights, judges uphold the Constitution by remedying that policy. They should certainly do no less. But our constitutional order also requires that judges do no more.

Neither due process nor precedent requires some of the district court's ordered remedies. *See Morrissey*, 408 U.S. at 488–89 (enumerating the six "minimum requirements of due process" for parole revocations). For example, Remedy 6 ordered MDOC to "[o]rally offer to read the Notice of Rights form to parolees" even

-9-

though *Morrissey* did not make an "oral reading" a due process requirement. *See id.* at 485–89. This type of micromanaging needlessly enmeshes the court in the minutiae of the parole revocation process. Likewise, the court finds no abuse of discretion in Remedy 5—which ordered MDOC to disclose to parolees "all evidence against them no later than five days before the revocation hearing"—because the remedy does not "overburden" MDOC. *Ante*, at 3–4. Yet, this remedy and others are absent from the "minimum requirements" of *Morrissey*. *See Gasca v. Precythe*, 500 F. Supp. 3d 830, 867–70 (W.D. Mo. 2020) (e.g., remedies 10, 12, and 13). These remedies improperly inject the court into the parole revocation process and usurp policymaking authority from the responsible state agency. *Cf. Morrissey*, 408 U.S. at 483 (recognizing the state's interest in its own discretion as long as parolees get the minimum requirements of a factual hearing). A court should not "thrust itself into [agency] administration" but allow the agency itself "to devise a remedy for the violation," giving suggestions when appropriate. *Bounds v. Smith*, 430 U.S. 817, 832–33 (1977). *Accord Lewis v. Casey*, 518 U.S. 343, 363 (1996). In my view, the district court exceeded its discretion by overstepping the judiciary's constitutional bounds.

Magnifying the overreach, the district court retained jurisdiction over its own order as well as "other constitutional issues [that] come to light." *Gasca*, 500 F. Supp. 3d at 870. Sometimes a district court needs to retain jurisdiction. *See, e.g.*, *Burks v. Teasdale*, 603 F.2d 59, 62 (8th Cir. 1979) (holding that the district court's retention of jurisdiction was "proper" when the order concerned alleviating unconstitutional prison overcrowding). Nevertheless, the district court's retention of near-limitless jurisdiction goes too far, especially "given the great strides" already taken by MDOC. *Gasca*, 500 F. Supp. 3d at 870. Rather than allow MDOC to craft its own remedial policies, the district court injected itself "into the day-to-day management of institutions and local policies—a function that lies outside of our Article III competence." *Missouri v. Jenkins*, 515 U.S. 70, 135 (1995) (Thomas, J., concurring).

I also disagree with the court in its conclusion that the Commission is not a required party. Even if MDOC is the state entity that decides when counsel should be appointed and can stay proceedings until such counsel is appointed, Missouri law requires the Commission to appoint counsel when the appointment is constitutionally required. Mo. Rev. Stat. § 600.042.4(5). Unless the Commission is joined as a party, the relief to parolees is only partial—perhaps even illusory—because the Commission could still fail to cooperate and make the necessary appointments even when MDOC asks for appointment. *See* Fed. R. Civ. P. 19(a)(1)(A).

Though I join the court in vacating the specific remedies it held exceeded the district court's discretion, I would go further and vacate the entire order, remanding it to the district court to reconsider its remedies according to *Morrissey* and *Gagnon*. Because I believe principles of federalism and judicial restraint counsel against judges perpetually peering over state agencies' shoulders to enforce our own preferred code of procedure, I would instruct the district court to release jurisdiction after its entry of judgment, or at the very least curtail the scope of its retained jurisdiction to only review the implementation of its ordered remedies.

_____