

**E-FILED**
**CNMI SUPREME COURT**
E-filed: Oct 18 2024 04:58PM
Clerk Review: Oct 18 2024 04:59PM
Filing ID: 74789864
Case No.: 2022-SCC-0017-CIV
Judy  Aldan



IN THE

# Supreme Court

OF THE

# Commonwealth of the Northern Mariana Islands

**SHAWN APPLEBY,**
*Petitioner-Appellant,*

*v.*

**WALLY VILLAGOMEZ, COMMISSIONER, CNMI DEPARTMENT OF
CORRECTIONS (DOC), AND RAMON B. CAMACHO, CHAIRMAN, CNMI BOARD
OF PAROLE (BOP),**
*Respondents-Appellees.*

**Supreme Court No. 2022-SCC-0017-CIV**

---

## SLIP OPINION

**Cite as: 2024 MP 7**

Decided October 18, 2024

———————

CHIEF JUSTICE ALEXANDRO C. CASTRO
ASSOCIATE JUSTICE JOHN A. MANGLOÑA
ASSOCIATE JUSTICE PERRY B. INOS

———————

Superior Court Civil Action No. 20-0168
Presiding Judge Roberto C. Naraja, Presiding

———————

CASTRO, C.J.:

¶ 1    Petitioner-Appellant Shawn Appleby ("Appleby") appeals the denial, in part, of his amended petition for writ of habeas corpus against Respondent-Appellees Department of Corrections Commissioner Wally Villagomez and Chairman of the Board of Parole Ramon B. Camacho ("Chairman Camacho") (collectively "Commonwealth") stemming from alleged due process violations during parole revocation. We AFFIRM the trial court's decision that the Board of Parole ("Board") failed to comply with the minimum due process requirements at the preliminary hearing stage and ORDER the Board to redetermine Appleby's parole eligibility date because he was prejudiced by one due process violation.

## I. FACTS AND PROCEDURAL HISTORY

¶ 2    In 1997, Appleby pled guilty to robbery-murder and was sentenced to forty years imprisonment, with a minimum of ten years to be served. While imprisoned, he was further convicted and sentenced for two attempted escapes.

¶ 3    In 2011, Appleby was first granted parole. However, his parole was revoked for violating ten conditions of parole one year later. Appleby was again released on parole in September 2019.

¶ 4    On March 24, 2020, Appleby was arrested for assaulting another parolee, Laraad Ramangmou ("Ramangmou"). He was charged with assault and battery and obstructing justice for telling Ramangmou to lie to parole officers about the events leading to his arrest. Appleby later pled guilty to obstructing justice in exchange for dismissal of the assault charge.

¶ 5    Appleby's parole was then suspended for probable cause that he violated his conditions of parole. This probable cause determination was based on the affidavit of Parole Officer Jason A. Lizama ("PO Lizama") outlining Appleby's March 24 arrest.

¶ 6    On March 31, 2020, Appleby was served with a Parole Violation Citation listing three conditions of parole that he allegedly violated:

> [General] Condition 04 — You shall not engage in criminal conduct. You shall immediately inform your parole officer if you are arrested for a felony or misdemeanor under Federal State of Commonwealth Laws.
> [Additional Term and] Condition 01 — You shall refrain from engaging in any criminal conduct nor violate any laws of the Commonwealth of the Northern Marianas Island [sic].
> [Additional Term and] Condition 10 — You shall not associate with persons that engage in criminal activities or without the permission of the Chief Parole Officer, with persons that have been convicted of a crime.
> Am. Appendix at 108.

He was also served a notice of his right to a preliminary hearing before the Board. The notice stated that the hearing was to determine probable cause for the parole

violations and informed Appleby that he had a right to appear with legal counsel at his own expense, present witnesses and introduce documents or evidence, and confront and cross-examine adverse witnesses. *Id.* at 111. Appleby elected to proceed with a preliminary hearing and was served with a summons on April 10 to appear on April 13.

¶ 7     On the day of the preliminary hearing, Appleby asked Chief Parole Officer Nick Reyes ("Chief Reyes") for assistance in securing an attorney and presenting witnesses. Chief Reyes responded that the preliminary hearing was not the final revocation, emphasizing he would not require a lawyer or witnesses until then. Tr. at 10.

¶ 8     At the preliminary hearing, hearing officer Michael H. San Nicolas ("San Nicolas") stated that the purpose of the hearing was to determine whether Appleby violated conditions of his parole and find probable cause to proceed with a revocation hearing. Tr. at 1. San Nicolas read Appleby his rights, including the right to be represented "by an attorney at his own expense" and his right to "present relevant witnesses or testimony." *Id.* at 2.

¶ 9     Appleby then stated that he had "wanted to call [a] lawyer" but "had no notice until Friday," when he received the Preliminary Hearing Summons. Tr. at 3. He also stated that he wanted witnesses present on his behalf, including his "counselor from CGC." *Id.*

¶ 10    Assistant Attorney General Leslie Healer ("AAG Healer") was also in attendance on behalf of the Board and questioned Appleby about his desire to secure counsel. Upon learning that he did not know an attorney to call and that he had not done so, AAG Healer responded, "we're going to have to continue on with this hearing as is because you pretty much waived your right to counsel by not contacting anyone." *Id.* at 7. She then went on to say, "and remember, this is only a preliminary hearing, you can still contact counsel for the revocation hearing if there's a revocation hearing." *Id.* At this point, San Nicolas proceeded with the preliminary hearing and Appleby raised no objections.

¶ 11    PO Lizama read aloud his affidavit for Conditions 4, 1, and 10, including the brief facts about Appleby's March 24 arrest supporting each violation. Appleby denied assaulting Ramangmou but admitted having contact with her. After this statement, San Nicolas found probable cause that Appleby violated the conditions of his parole.

¶ 12    The Board served an order which summarized its finding of probable cause of violation of Conditions 4, 1, and 10. The order also found probable cause for another parole violation: "[Additional Term and] Condition 14 – I shall adhere to the instructions of the Parole Officer" for Appleby's failure to follow PO Lizama's instruction to cease contact with Ramangmou. Am. Appendix at 115. This violation was not included in Appleby's Parolee Violation Citation or Notice, nor was it addressed during the preliminary hearing.

¶ 13    On June 2, 2020, Appleby requested the Board appoint indigent counsel at

the final revocation hearing. On June 14, 2020, the Board rejected the request because "the issue of Mr. Appleby's violation is a matter of public record and is not complex or otherwise difficult to develop or present even if attempting to justify or mitigate." *Id.* at 120.

¶ 14    That same day, Appleby was served with a notice of a final revocation hearing to take place on July 10, 2020. Appleby's appointed counsel for the related criminal charges, Assistant Public Defender Jean Pierre Nogues ("Nogues"), entered his appearance with the Board. Chairman Camacho informed Nogues that "Appleby may consult with you prior to the hearing, but you may not represent him during the hearing."[1] *Id.* at 126.

¶ 15    The Board held the final revocation hearing on July 10, 2020. Nogues appeared and stated that "I will be here to counsel [Appleby] but I already told him that I cannot represent him in the hearing." Tr. at 12. Chairman Camacho then advised Appleby of his right to his own counsel and confirmed he had counsel present with whom he could consult. Neither Nogues nor Appleby objected to this scope of representation.

¶ 16    The Commonwealth presented six witnesses, including Ramangmou and PO Lizama. Chairman Camacho allowed Nogues to cross-examine the witnesses. Nogues elected to question four of the witnesses, focusing mostly on Ramangmou. Chairman Camacho ended the cross-examination of Ramangmou after concluding Nogues had exceeded the scope of permissible questioning by asking about her own parole violations.

¶ 17    Relevant to this appeal, both Ramangmou and PO Lizama testified about the relationship between Ramangmou and Appleby. Ramangmou testified that she is a parolee, that she had been dating Appleby since September 2019, and that they were living together in March 2020 when he was arrested. PO Lizama testified that he instructed Appleby to cease contact with Ramangmou in November 2019, but that he had known about the relationship for more than a month at that time. PO Lizama also conceded that he instructed Appleby only after Chief Reyes informed him that Chairman Camacho had learned about the relationship and wanted it to stop.

¶ 18    In his closing statement Appleby admitted he was arrested on March 24, but denied an arrest alone is a violation of Condition 1—refraining from engaging in criminal conduct—or Condition 4—complying with the law. He also admitted to the relationship with Ramangmou, but claimed he had permission from PO Lizama and denied the relationship was thus a violation of Condition 10—not associating with those convicted of a crime. He declined to answer a question about pushing or punching Ramangmou by pleading the fifth. Appleby

---

[1]    The Board cites NMI Administrative Code § 115-10-535 as the basis for its clarification: "Parolee shall be permitted to consult with any persons whose assistance parolee reasonably desires, including parolee's own legal counsel, in preparing for a hearing before the Board of Parole."

did not present any witnesses to testify. Throughout his questioning, though, Appleby referenced mitigating factors: that he was employed, that he took care of his children every weekend, and that, since his release, he was never cited for any bad conduct outside of the March 24 incident.

¶ 19    The Board found unanimously, by a preponderance of the evidence, that Appleby violated four conditions of his parole, later providing a written order summarizing factual findings for the probable cause determination and noting that Appleby was represented by Nogues at the final hearing.

¶ 20    Appleby had previously filed a petition for writ of habeas corpus in the Superior Court based on alleged due process violations from the preliminary hearing. He timely amended his petition in June 2021 to include allegations of due process violations at the final revocation hearing.  Consequently, the court vacated the Board's decision with instruction to reconvene and reassess his parole eligibility date to any amount less than what had been previously determined. Appleby timely appeals.

## II. JURISDICTION

¶ 21    We have appellate jurisdiction over final judgments and orders of the Commonwealth Superior Court. NMI CONST. art. IV, § 3. The Superior Court has the ability to grant writs of habeas corpus, and this Court may review such orders. 6 CMC §§ 7101, 7107.

## III. STANDARD OF REVIEW

¶ 22    We review appeals from denials of writs of habeas corpus de novo. *Rios v. Commonwealth*, 2022 MP 2 ¶ 9; *Commonwealth v. Miura*, 2010 MP 12 ¶ 5. Factual findings found by the trial court are accepted unless they are clearly erroneous. *See Crisostomo v. Commonwealth*, 2022 MP 6 ¶ 9.

## IV. DISCUSSION

¶ 23    Appleby claims the Board violated his due process rights by failing to do three things:

> (1)  inform him of his right to request indigent counsel,
> (2)  appoint indigent counsel after a proper *Gagnon* analysis, and
> (3)  justify the finding of probable cause at the preliminary hearing.
> Appellant's Br. at 12–17.

The Commonwealth responds that the alleged violations at the preliminary hearing were mooted by the final parole revocation hearing. Appellee's Br. at 11. We first address the mootness claim before reaching the merits.

### A. Appleby does not present a moot question.

¶ 24    The Commonwealth argues the disposition of the final revocation hearing and Appleby's assistance of counsel during the final revocation hearing moots the due process violations occurring before and during the preliminary hearing. *Id.* Although Appleby concedes a final hearing may moot challenges to a preliminary hearing, he argues fundamental due process considerations necessitate a lawful preliminary and final revocation hearing. We do not make

such a meritorious decision here, but it is appropriate to determine the lawfulness of the preliminary hearing in this appeal.

¶ 25    The duty of the Court is to "decide actual controversies by a judgment which can be carried into effect, and not to give opinions on moot questions . . . or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Torres v. House Standing Comm. on JGO*, 2023 MP 10 ¶ 5 (quoting *Govendo v. Micronesian Garment Mfg.*, 2 NMI 270, 281 (1991)). Mootness may be set aside when an issue is "(1) of public importance, (2) likely to recur, and (3) likely to become moot again prior to appellate review." *In re Commonwealth*, 2022 MP 5 ¶ 9.

¶ 26    First, it is of public importance that parolees are afforded, at minimum, the procedural due process mandated by the Constitution. In *In re Commonwealth*, we held an exception to mootness applied because the petition concerned "the procedures by which the Commonwealth establishes probable cause"—like preliminary hearings—"implicate the core constitutional right of due process." *Id.* at ¶ 10. Here, it is no different: the petition concerns due process rights afforded to parolees throughout parole revocation, including at the preliminary hearing stage. Such "constitutional questions satisfy this prong of the exception." *Castro v. Castro*, 2009 MP 8 ¶ 9 (finding that an appeal concerning due process and seeking reversal under the takings clause renders it appropriate for this Court's review).

¶ 27    Second, this issue will likely recur because the Board regularly conducts revocation proceedings and hears cases in which a parolee may have violated conditions of parole. It is the Board's statutory duty to conduct parole revocation hearings. 6 CMC § 4205. There will be further challenges to proceedings, hearings, and findings by the Board.

¶ 28    Finally, "it is likely that similar issues arising in the future would likewise become moot before an authoritative determination by an appellate court can be made." *Olupomar v. Mahora*, 2001 MP 17 ¶ 13 (citing *In re Seman*, 3 NMI 57, 64–65 (1992)). A challenge to parole revocation may become moot due to the inherently short window before a final revocation hearing or a release from custody.

¶ 29    Given the implications parole revocation have on individuals' liberty, the public has an important and critical interest in determining whether due process was afforded in all stages of the revocation proceedings. The constitutional issues raised in this appeal will likely recur and become moot before our review. Accordingly, we will review the merits of the writ.

> *B. The precedent laid out in* Morrissey *and* Gagnon *control.*

¶ 30    Appleby contends he was not afforded the minimal procedural due process protections he was entitled to in both his preliminary and final parole revocation hearings, in violation of the Due Process Clause. The NMI Constitution and the Fourteenth Amendment to the United States Constitution both identically provide that "no person shall be deprived of life, liberty, or property without due process

of law." NMI CONST. art. I, § 5; U.S. CONST. amend. XIV, § 1. Because the two clauses are coextensive, "we interpret the Commonwealth Constitution's Due Process Clause as in line with the United States Constitution's Due Process Clause." *Commonwealth v. Crisostomo*, 2018 MP 5 ¶ 48 (quoting *Pac. Fin. Corp. v. Muna*, 2008 MP 21 ¶ 5 n.1); *see Castro*, 2009 MP 8 ¶ 16.

¶ 31    In *Morrissey v. Brewer*, 408 U.S. 471 (1972), the United States Supreme Court analyzed the constitutionality of parole revocation proceedings and recognized the liberty interest of parolees. In that case, the petitioners claimed they were denied due process because their parole was revoked without a hearing. *Id.* at 473. The Court held that state criminal parolees are afforded due process rights during two stages of parole revocation proceedings under the Fourteenth Amendment. *Id.* at 489. Both stages have separate, yet similar, due process requirements.

¶ 32    Parolees are first entitled to a preliminary hearing before a neutral officer to find probable cause for a parole violation. *Id.* at 485. They must be given notice that informs them of when the hearing will take place, that its purpose is to find probable cause, and which violations have been alleged. *Id.* at 486–87. At the hearing, parolees must be given the opportunity to speak on their own behalf, present evidence or witnesses to the hearing officer, and question any adverse witness—unless the hearing officer determines this would subject that person to risk of harm. *Id.* at 487. The final requirements are that the hearing officer summarize the events of the hearing and determine whether probable cause exists to detain the parolee pending a Board decision. *Id.* The Court stressed that, despite these requirements, the preliminary hearing is still informal. *Id.*

¶ 33    Parolees are then entitled to a final, formal hearing before the Board makes its decision. *Id.* at 487. *Morrissey* laid out a framework of six requirements for final parole revocation hearings to satisfy due process:

  (a) written notice of the claimed violations of parole;
  (b) disclosure to the parolee of evidence against him;
  (c) opportunity to be heard in person and to present witnesses and documentary evidence;
  (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation);
  (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and
  (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.
  *Id.* at 489.

In doing so, the Court emphasized that "there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense" and that a parolee is not due the same extent of rights as a criminal defendant. *Id.* These six

minimum requirements were not intended "to create an inflexible structure" nor "impose a great burden on any State's parole system." *Id.* at 490.

¶ 34    One year later in *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), the Supreme Court expanded upon *Morrisey* and determined there is a presumptive right to indigent counsel on a case-by-case basis. The Court found there are minimal due process safeguards for both parole and probation procedures, but that there is no constitutional duty to provide such counsel for indigent persons in all probation or parole revocation cases. *Id.* at 787. Instead, the Court established a case-by-case approach as to the need for counsel "in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system." *Id.* at 790. The Court created guidelines in determining whether counsel should be provided:

> Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself. In every case in which a request for counsel at a preliminary or final hearing is refused, the grounds for refusal should be stated succinctly in the record.
> *Id.* at 790–91.

¶ 35    The *Gagnon* Court further specified that this flexible analysis is necessary to complete for revocation hearings because, even if indigent counsel would not be necessary for most parolees and probationers, "there will remain certain cases in which fundamental fairness-- the touchstone of due process-- will require that the State provide at its expense counsel for indigent probationers or parolees." *Id.* at 790. This *Gagnon* analysis must occur for preliminary and final hearings alike to satisfy due process. *Id.*

¶ 36    The *Morrissey* and *Gagnon* due process requirements are not wholly separate issues. As the Supreme Court noted, "the effectiveness of the rights guaranteed by *Morrissey* may in some circumstances depend on the use of skills" provided by counsel guaranteed by *Gagnon*. *Id.* at 786.

¶ 37    We have previously applied the *Morrissey* requirements to probation revocation proceedings and found that indigent probationers do not have an automatic right to appointed counsel based on *Gagnon*. *See Commonwealth v. Daikichy*, 2007 MP 27 ¶ 16; *see also Commonwealth v. Cristobal*, 4 NMI 345,

346 n.3 (1996). The constitutional guarantees governing probation, parole, and other supervised release are identical, and we may find case law regarding only one form of supervised release as relevant to all. *Daikichy*, 2007 MP 27 ¶ 6. We hold that both *Morrissey* and *Gagnon* apply to parole revocation hearings and will now review whether the Board afforded Appleby the minimum due process throughout the parole revocation proceedings.

### C. Due Process Requirements for Preliminary Hearings.

¶ 38    At a preliminary parole revocation hearing, parolees are due the following six requirements:

> (1) Prior notice of the hearing, its purpose to find probable cause, and the alleged parole violations;
>
> (2) A time and place reasonably near the place of the alleged parole violation and as promptly as convenient;
>
> (3) A probable cause determination made by someone not directly involved in the case;
>
> (4) Opportunity to speak on their own behalf and present witnesses and evidence;
>
> (5) If requested by the parolee and absent safety concerns, opportunity to question a person who has given adverse information on which the parole revocation is based; and
>
> (6) A summary of the hearing created by the hearing officer and a determination of probable cause, including their reasons for the determination and the evidence they relied upon.
>
> *Morrissey*, 408 U.S. at 485–87.

¶ 39    Under *Gagnon*, there are two bases through which the Board may find a parolee has a right to indigent counsel. The Board must provide counsel to indigent parolees who request it if the parolee has made a timely and colorable claim that:

> (1) they did not commit the alleged violation, or
>
> (2) there are substantial, complex reasons justifying or mitigating an uncontested or publicly recorded violation.
>
> 411 U.S. at 790–91.

In reviewing this claim, the Board must also consider whether the parolee appears capable of speaking effectively without assistance of counsel. *Id.*

¶ 40    While all *Morrissey* requirements must be met and a *Gagnon* analysis must be fully completed to satisfy due process in a preliminary hearing, Appleby only raises issue directly with the *Gagnon* analysis and three *Morrissey* requirements: (1) notice of the alleged violations, (5) his opportunity to examine adverse information, and (6) the identification of reasons supporting and the evidence relied upon for a probable cause finding. Appleby clearly met the remaining *Morrissey* requirements; therefore, we will limit our discussion accordingly.

¶ 41    Due process requires that a parolee be informed of their ability to request indigent counsel before a preliminary parole revocation hearing. *Gagnon*, 411 U.S. at 790. Appleby received a document entitled "Parolee's Rights," in which the Board of Parole advised him of his right to "appear with a Legal Counsel of your own choice, at your own expense, who could assist you in defending your case." Am. Appendix at 111. There is no statement informing Appleby that he may request indigent counsel.

¶ 42    Though *Gagnon* allows Boards of Parole significant discretion in appointing indigent counsel and may largely deny any request, they are required to provide notice of the right to first make that request. *Gagnon*, 411 U.S. at 790. Of additional concern is that both Chief Reyes and hearing officer San Nicolas continued to misinform Appleby about his right to indigent counsel on the day of the preliminary hearing, stating that he would not need representation until the final hearing and that he could only have counsel at his own expense. Tr. at 1, 10.

¶ 43    The Board did not comply with due process when notifying Appleby of his potential right to indigent counsel at his preliminary hearing. In providing a parolee notice of their rights at a parole revocation hearing, the Board must include notice of the *right to request* indigent counsel, not just the right to appear with counsel at one's own expense. Once requested, the Board must then continue with its *Gagnon* analysis. Only after fully complying with *Gagnon* may the Board determine that a parolee does not have a right to indigent counsel.

¶ 44    However, in light of the *Gagnon* requirements, this Court concludes Appleby did not have a constitutional right to counsel at his preliminary parole revocation hearing. Appleby did not timely allege facts showing a need for counsel, such as justifying or mitigating reasons for violation of his parole, given that his arrest was a matter of public record and a clear violation of the terms and conditions of his parole. *Gagnon*, 411 U.S. at 790; Am. Appendix at 120. Furthermore, counsel assisted him at the final parole revocation hearing. *See* Am. Appendix at 126. The failure to notify Appleby of his right to request indigent counsel was, in this case, a harmless error.

¶ 45    Appleby next contends that the Board failed to present evidence sufficient to support a finding of probable cause. *Morrissey* does not specify that due process requires the Commonwealth to present evidence against a parolee. *See* 408 U.S. at 485–87. On appeal, Appleby takes issue that PO Lizama "simply read aloud the 'Description of Alleged Violations' in the charging document," stating that Appleby was arrested. Appellant's Br. at 16.

¶ 46    A parolee has a conditional right to question adverse witnesses, but there is no definite obligation for the Commonwealth to produce any specific witnesses or evidence in an effort to show probable cause. Courts have consistently reinforced that a preliminary hearing is informal and the requirements placed on the Board are lenient. *Gagnon*, 411 U.S. at 786–87 (recognizing that parole and probation hearings are informal and lack any "technical rules of procedure or

evidence"); *Gerstein v. Pugh*, 420 U.S. 103, 120–21 (1975) (stating that the probable cause standard "traditionally has been decided by a magistrate in a nonadversary proceeding on hearsay and written testimony" and that the probable cause standard in a preliminary hearing "does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the evidence supports a reasonable belief in guilt"); *Yost v. Solano*, 955 F.2d 541, 545 (8th Cir. 1992) (emphasizing that a preliminary hearing may serve as a "prompt initial investigation" into an arrest and that requiring anything beyond this would compromise the ability of the parole board to hold the hearing "as promptly as convenient after the arrest," as required by *Morrissey*).

¶ 47    Presenting Appleby's March 24 arrest through PO Lizama's affidavit at the preliminary hearing was sufficient evidence to show probable cause that Appleby violated Commonwealth laws. The probable cause standard used in a preliminary hearing "is the same as that for arrest." *Babauta v. Superior Court*, 4 NMI 309, 310 n. 5 (1995). PO Lizama, under oath, read specifically from his affidavit made in support of the arrest warrant against Appleby, including "the facts which [PO Lizama would] believe are necessary to establish probable cause." Am. Appendix at 105. PO Lizama sufficiently showed probable cause for Conditions 4 and 1, which prohibit criminal conduct.[2] Additionally, Appleby himself stated under oath that he was in contact with Ramangmou, a parolee. Tr. at 8. This is a clear violation of Condition 10, not having contact with a criminal. Appleby also stated under oath that he had been told to cease contact with Ramangmou. *Id.* This would be sufficient to support a finding of probable cause for Condition 14, which compels obeying parole officer instructions.

¶ 48    Appleby also contends that San Nicolas could not find probable cause for Condition 14 because he was not provided notice that Condition 14 was one of the alleged violations. Notice of the allegations is part of the first requirement at a preliminary hearing from *Morrissey*. 408 U.S. at 485. The first mention of a Condition 14 violation is in the Order issued by San Nicolas following the preliminary hearing. Am. Appendix at 116. Appleby was not afforded the proper due process for this alleged violation, beginning with no opportunity to assert his right to a preliminary hearing for Condition 14 before a finding of probable cause was made by the Board. Although the Board could have reasonably found

---

[2]    On appeal, Appleby argues Condition 4 does not broadly prohibit all criminal conduct; instead, it is only violated when a parolee is arrested for criminal conduct and fails to inform their parole officer immediately. Appellant's Br. at 16. Condition 4 states in its entirety: "Criminal conduct. You shall not engage in criminal conduct. You shall immediately inform your parole officer if you are arrested for a felony or misdemeanor under Federal, State, or Commonwealth Laws." Am. Appendix at 150. It is clear from the complete text that any criminal conduct can lead to a violation, not just instances where a parolee fails to report an arrest. We reject Appleby's interpretation of the final sentence, as it presents an absurd reading of the condition as a whole.

probable cause for a violation of Condition 14 based upon Appleby's testimony, it was improper for the Board to do so without first providing Appleby notice of the alleged violation and the opportunity to waive a preliminary hearing on that condition of parole.

¶ 49  Finally, Appleby alleges that San Nicolas failed to provide the factual findings he relied upon in making his probable cause determination in the summary of the hearing, as required by *Morrissey*. 408 U.S. at 486. The April 15 Order lists the facts supporting each violation. Am. Appendix at 115–16. These are the same facts that PO Lizama included in his finding of probable cause for Appleby's arrest, Am. Appendix at 105, which he read aloud, under oath, at the preliminary revocation hearing. Tr. at 5. San Nicolas's findings are the only facts on the record because they are all that is needed to support a finding of probable cause as to violations of Conditions 4, 1, and 10. Because a probable cause finding in the April 15 Order for Condition 14 was improper, we need not examine that determination and its supporting facts.[3]

¶ 50  The Board failed to adequately safeguard Appleby's due process rights during his preliminary hearing procedure in two ways. First, the Board did not comply with the *Gagnon* notice requirement. Parolees facing revocation must be provided notice that they have a conditional right to indigent counsel for a preliminary hearing. The Board may only decline to provide such representation after a parolee has been notified and made a request. Second, the Board did not comply with the *Morrissey* notice requirement in the limited scope of Condition 14. Parolees must be given notice of all alleged violations, and provided an opportunity to elect or waive their right to a preliminary hearing, prior to a probable cause determination.

¶ 51  As the trial court below did, this Court urges the Board to adjust its notice practices moving forward to ensure complete compliance with both *Gagnon* and *Morrissey*. Before discussing the remedy specific to Appleby, we first examine his final parole revocation hearing for any due process violations.

*D. Due Process Requirements for Final Revocation Hearings.*

¶ 52  *Morrissey* requirements for a final hearing are distinct from, but similar to, the requirements for a preliminary hearing. Parolees are due six procedures in a final revocation hearing:

  (1)  Written notice of the claimed violations;
  (2)  Disclosure of the evidence against them;
  (3)  Opportunity to be heard in person and to present witnesses and documentary evidence;

---

[3]  The April 15 Order provides more facts surrounding the violation of Condition 14 than what the record shows during the preliminary hearing. The Board is limited in its scope of review to only the evidence presented at the preliminary hearing and must rely solely upon the information properly submitted when making its determinations.

> (4) Right to confront and cross-examine adverse witnesses, unless the hearing officer finds good cause to disallow it;
>
> (5) A neutral and detached parole board; and
>
> (6) A written statement by the factfinders as to the evidence relied on and reasons for revoking parole.
>
> *Morrissey*, 408 U.S. at 489.

While all six requirements must be met to satisfy due process, Appleby has not raised issue with any outside the context of his right to counsel. Appleby has stylized any due process violation of the *Morrissey* requirements as an ineffective assistance of counsel claim. *See* Reply Br. at 4. Parolees do not have an automatic right to counsel under the due process clause, *Gagnon*, 411 U.S. at 790, and we must first examine whether Appleby had such a right in this case.

¶ 53      *Gagnon* applies equally to final revocation hearings as it does to preliminary hearings. A parolee must be notified of the right to request indigent counsel, and if such a request is made with a timely and colorable claim, the Board must determine if there is a sufficiently demonstrated need for indigent counsel. *Gagnon*, 411 U.S. at 790–91; *supra* at ¶ 39.

¶ 54      Appleby timely requested indigent counsel, claiming he did not violate his parole under the first *Gagnon* basis. *See* Am. Appendix at 118. However, the alleged violation is from the public record: his March 24 arrest and subsequent criminal charges. The Board noted this in denying indigent counsel. *Id.* at 120. Additionally, he specifically appeals the Board's denial of appointed counsel under the second basis of *Gagnon*, analyzing whether there are substantial or complex reasons for violating parole conditions. He argues the decision was not based upon a *Gagnon* analysis but rather "a traditional and reflexive refusal to appoint counsel [for] parole review cases under any circumstances." Appellant's Br. at 19. Under the second basis of a *Gagnon* analysis, the Board must have properly found that there were insufficient or non-complex reasons justifying or mitigating Appleby's violations. 411 U.S. at 790–91.

### *1. Appleby's violations are a matter of public record.*

¶ 55      Though the Board did not address the first basis of *Gagnon* in denying indigent counsel, they did not need to do so. The denial clearly rests on the conclusion that the second basis was not met because the violation was in the public record and there were no complex reasons for the violation.

¶ 56      The Commonwealth explains that if a parolee needed to simply deny allegations and be automatically appointed counsel, such a reading would defy common sense and lead to absurd results. Appellee's Br. at 25 (citing *Commonwealth v. Borja*, 2018 MP 13 ¶ 18). We agree. *Gagnon* requires both a timely and colorable claim. Simple denials of allegations would strip away the Board's discretion to appoint indigent counsel. Under *Gagnon,* the Board has discretion to appoint indigent counsel if a parolee denies committing an alleged violation and it is not a matter of public record. If it is public record, the Board may then determine if "there are substantial reasons which justified or mitigated

the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present." *Gagnon*, 411 U.S. at 790.

¶ 57 The Board's boilerplate form for requesting indigent counsel does not provide parolees with the opportunity to explain why they should be appointed counsel. *See* Am. Appendix at 118. This form effectively prevents parolees from advocating for their right to counsel and forces them to only make simple denials that are insufficient to justify appointment of counsel. "The need for counsel at revocation hearings derives, not from the invariable attributes of those hearings, but rather from the peculiarities of particular cases." *Gagnon*, 411 U.S. at 789. The Board should update this request form to allow the opportunity to explain innocence or identify justifying and mitigating reasons for a violation, lest future parolees may truly present a scenario where the Board has only reflexively denied counsel without analyzing each particular case's merits.

*2. Appleby failed to provide substantial, complex reasons.*

¶ 58 Under the second basis of a *Gagnon* analysis, the Board must consider the existence and complexity of the parolee's reasons for committing a publicly recorded or uncontested violation. *Id.* at 790. Indigent counsel only need be provided when those reasons are more than simple excuses. On appeal, Appleby argues that the facts surrounding his arrest are convoluted, without further explaining where these facts existed on the record. Appellant's Br. at 18.

¶ 59 Other courts have set a high bar for what mitigating and justifying reasons require indigent counsel appointment. The Supreme Court in *Wood v. Georgia* found sufficient reasons to warrant appointing counsel where the probationers had their probation revoked for failure to pay a fine based of assurances from their employer that they would pay on behalf of the probationers, since the fines stemmed from criminal conduct which originally occurred because of their employment. 450 U.S. 261, 266, 269 (1981). The *Wood* probationers were faced with a novel constitutional question sufficiently complex that the Court found they had a right to appointed counsel. *Id.* The Fourth Circuit found a probationer presented sufficiently complex issues when he identified five witnesses and sources of evidence from various medical professionals and people involved with the criminal justice system. *Farabee v. Clarke*, 967 F.3d 380, 391 (4th Cir. 2020). The Rhode Island Supreme Court also found a parolee had a right to indigent counsel after he made numerous written requests for counsel because he had been wrongly convicted and contested the applicability of a Rhode Island statute to a Pennsylvania conviction—a complex legal question. *Jefferson v. State*, 184 A.3d 1094, 1099 (R.I. 2018).

¶ 60 Appleby's alleged violations presented no such legal issues or complex evidentiary support. Appleby only had his own testimony. At the preliminary hearing, Appleby testified under oath contesting that he struck Ramangmou. Tr. at 7. He admitted to being in contact with Ramangmou outside the context of his parole requirements and in violation of Condition 10. Appleby's only direct defense was that their relationship was less than a month old. Tr. at 8. He did, however, make a general plea to hearing officer San Nicolas to recognize that he

was trying to build a new life with his daughter and did not want to lose his employment. *Id.*

¶ 61    The Board, in its sound discretion, rejected Appleby's request. There are no facts, evidence, witnesses, or other information proffered that could demonstrate why he needed indigent counsel. He offered no justification for his inability to effectively present his claims. Appleby was able to give a statement and offer mitigating evidence during his preliminary hearing. Nothing between then and the date of his request shows how counsel was needed.

¶ 62    Moreover, the Board's denial on its face complies with a proper *Gagnon* analysis. Chairman Camacho's letter to Appleby specifically states that the Board found "the issue of Mr. Appleby's violation is a matter of public record and is not complex or otherwise difficult to develop or present even if attempting to justify or mitigate" after reviewing Appleby's circumstances. Am. Appendix at 120. The Board stated it performed a *Gagnon* analysis, and given the limited justifications or mitigating factors presented, we have no basis to conclude otherwise.

¶ 63    While the denial of indigent counsel was not in depth as to its reasoning, the Commonwealth maintains the broad discretion to reject such requests. *Gagnon*, 411 U.S. at 790. And even in denying counsel, the Board allowed Appleby's counsel from a related criminal case to cross-examine witnesses. *See* Tr. at 12. Appleby was still represented by counsel of his own choosing. We need not examine further whether a lack of effective assistance of counsel infringed upon Appleby's due process rights under *Morrissey*. The final revocation hearing fully complied with the minimum requirements of due process.

> *E. Because only one due process violation prejudiced Appleby, his remedy is limited to curing the improper addition of Condition 14.*

¶ 64    Appleby claims the violations of his due process rights at the preliminary hearing stage require this Court to fully grant the habeas petition and direct his rerelease on parole supervision immediately because he has been prejudiced by what is now four years of illegal detention. Appellant's Br. at 21–22. The Commonwealth contends the proper remedy for any due process violation is to remand for a new final hearing. Appellee's Br. at 27. Courts have broad discretion in determining the appropriate remedy for due process violations at parole revocation hearings, *see, for example, Anderson v. U.S. Parole Comm'n*, 793 F.2d 1136 (9th Cir. 1986), but we find Appleby's suggested remedy unsuitable.

¶ 65    Appleby was not prejudiced by the lack of counsel at the preliminary hearing. Even if the failure to properly conduct a preliminary hearing violated a parolee's due process rights, such error is rendered harmless by a constitutionally-compliant final parole revocation hearing. *See Edwards v. Edwards*, 817 F.2d 756 (6th Cir. 1987) (finding harmless error on a federal prisoner's claim of failure to conduct a preliminary hearing when his own admissions were sufficient to sustain a finding of violation). A formal request

from Appleby for appointment of indigent counsel prior to the preliminary hearing would not likely have led to any appointment. The Board determined that Appleby did not have a right to indigent counsel before the final hearing, relying upon the same facts available to the Board prior to the preliminary hearing. No new evidence arose from the preliminary hearing that would have made a *Gagnon* analysis stronger in Appleby's favor. Because the Board denied his request in June due to the issues not being complex or difficult to present, they would have come to the same conclusion in April.

¶ 66    Additionally, Appleby had the benefit of counsel at his final hearing. The purpose of appointing counsel for a parole revocation hearing is to assist the parolee when they "have difficulty in presenting his version of a disputed set of facts where the presentation requires the examining or cross-examining of witnesses or the offering or dissecting of complex documentary evidence." *Gagnon*, 411 U.S. at 787. From the record, this is the exact assistance Nogues provided at the final hearing. Nogues cross-examined all witnesses on Appleby's behalf. Tr. at 16–51. Nogues also told the Board that he was counseling Appleby on the revocation proceedings. *Id.* at 12. Despite having counsel, Appleby still did not present any witnesses or evidence on his own behalf, aside from his own statement. The Board's error in notifying Appleby of his potential right to indigent counsel at the preliminary hearing was harmless, as the Board later found no right to counsel existed based on the same facts and Appleby had counsel at the final revocation hearing. Either of these outcomes was sufficient to cure any harm stemming from the lack of notice.

¶ 67    Directing the Board to adjust their practices in the future is a more-than-sufficient remedy for non-prejudicial due process violations. *See, e.g., Gasca v. Precythe*, 83 F.4th 705 (8th Cir. 2023) (affirming the trial court's remedy of directing the Missouri Department of Corrections to update their policies and procedures to comply with due process requirements under *Morrissey*). Parolees are due certain rights and procedures during preliminary hearings to ensure the fair administration of justice throughout the entire criminal justice system. Because many deviations from due process in a preliminary hearing may be cured with a lawful final hearing is not reason for the Board, or any government office similarly situated, to continue purposeful noncompliance with constitutional law. The Board should update its forms to fully inform parolees of all their rights prior to a preliminary hearing and allow them to successfully request indigent counsel under *Gagnon*.

¶ 68    The Board further deviated from minimum due process guarantees on Condition 14, which prejudiced Appleby. The order finding probable cause erroneously included a violation of Condition 14 as one of the bases for revoking parole. Tr. at 57; *supra* at ¶ 48. Violation of Condition 14 was a factor the Board considered in determining Appleby's next parole eligibility date. Insofar as Condition 14's inclusion in the final order likely increased the period of Appleby's incarceration, he was prejudiced by the lack of notice and a preliminary hearing for that one condition.

¶ 69 The *Morrissey* procedural error is limited to Condition 14 and does not negate the Board's findings that Appleby violated parole Conditions 4, 1, and 10. Within the scope of this appeal, the three upheld violations and their factual findings on their own are sufficient to find Appleby violated his parole.

¶ 70 Appleby relies on *Glenn v. Reed*, 289 F.2d 462 (D.C. Cir. 1961), in arguing for parole reinstatement. In *Glenn*, the parolee was not offered counsel for the one parole revocation hearing held prior to his reimprisonment. *Id.* at 463. A federal trial court found this procedure illegal, and offered the parolee a new hearing with counsel present. The circuit court found this remedy inadequate to correct the error, as his entire imprisonment was illegal "and cannot be undone." *Id.* The court was further moved to order the parolee's release because the basis for the parole violation was a "a fabricated charge made by a 'jealous woman.'" *Id.*

¶ 71 These facts are largely dissimilar to the case before us. Appleby was properly denied a right to indigent counsel at the final revocation hearing, and yet had the assistance of counsel of his choice. The prejudicial effect of Condition 14 was mitigated because the Board properly found the three upheld violations. Appleby's reimprisonment has not been illegal.

¶ 72 We agree with the trial court that the appropriate remedy is for the Board to reconvene and reevaluate the date of parole eligibility without considering Condition 14. Appleby was afforded the minimum due process, or was not prejudiced by any deviation from such, aside from the Condition 14 violation. The lack of notice of his right to counsel under *Gagnon* for his preliminary hearing was harmless error in light of the proper procedure followed at the final hearing. The only outstanding error may be remedied by redetermining Appleby's parole eligibility date.

## V. CONCLUSION

¶ 73 We find that while the Board of Parole did not comply with due process under *Gagnon*, Appleby was not prejudiced by that error. However, he was prejudiced by the Board's failure to adhere to the *Morrissey* preliminary hearing requirements concerning the alleged violation of Condition 14. For this reason, we AFFIRM the trial court's decision and ORDER the Board to reassess Appleby's parole eligibility date.

SO ORDERED this 18th day of October, 2024.

/s/
ALEXANDRO C. CASTRO
Chief Justice

/s/
PERRY B. INOS
Associate Justice

MANGLOÑA, J., concurring:

¶ 74    To properly dispose of this case, I believe it is necessary to address an ethical issue that arises on the face of the appeal. I join the opinion in full, but write separately to acknowledge a matter that I believe the Court has erroneously failed to address. Though this particular matter only arose upon our thorough review of the record after oral argument and was not mentioned by any party, the Court should still have an obligation to address ethical issues *sua sponte*.

¶ 75    Twenty-seven years ago, Appleby was initially convicted by then-Judge Edward Manibusan. *See Commonwealth v. Appleby*, Criminal Case No. 96-0139 (NMI Super. Ct. Mar. 25, 1997) (Judgment and Probation/Commitment Order). He now serves as the Attorney General. Appellee's Br. at 1. In this appeal, the Commonwealth is represented by the Office of the Attorney General, under Manibusan's supervision. *Id.* The Commonwealth's appellate brief explicitly lists the Attorney General's bar number alongside his name as one of the two attorneys working the appeal on behalf of the Office of the Attorney General. *Id.*

¶ 76    The Model Rules of Professional Conduct ("MRPC") state that "a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge." MRPC R. 1.12(a). Additionally, no lawyer in the firm of a former judge may represent a party in the matter unless the judge is properly screened from the case. MRPC R. 1.12(c). The MRPC have been adopted by this Court in their entirety insofar as being grounds for attorney discipline. NMI R. ATT'Y DISC. & P. 3(1).

¶ 77    While the Office of the Attorney General is unique in its statutory duty to act as counsel for the Commonwealth, when requested, *see* 1 CMC § 2153(h), its attorneys must still comply with the MRPC. *See* MRPC R. 1.13 cmt. 9 (allowing courts to specially balance confidentiality with preventing or rectifying wrongful acts for government attorneys). In fact, the MRPC requires heightened ethical requirements for prosecutors and government attorneys. MRPC R. 1.11, 1.13, 3.8.

¶ 78    The Attorney General's involvement in this appeal raises serious concern regarding compliance with Rule 1.12. Given that he presided over Appleby's trial, issued his conviction, and set Appleby's sentence, he undeniably participated "personally and substantially" in the initial proceedings. *See Commonwealth v. Appleby*, Criminal Case No. 96-0139 (NMI Super. Ct. Mar. 25, 1997) (Judgment and Probation/Commitment Order). Attorney General Manibusan would thus be disqualified from further prosecutions of Appleby if Appleby did not provide informed consent at the initiation of this habeas proceeding four years ago. MRPC R. 1.12(a).

¶ 79    The appellate record does not include any consent by Appleby, though it also fails to include other pertinent documents—such as Appleby's actual petition for a writ of habeas corpus before the lower court. Regardless, there is no certain violation in this case. The Attorney General did not sign any brief, nor did he submit any filings to this Court through the e-filing system or appear for oral

argument. His name and bar number are included exclusively on the cover page of the Appellee's Brief; he is not listed as an attorney on the case in the various other appellate filings. This inclusion only on the brief, and not any other filing, may be proof of his lack of involvement in Appleby's case. The likelihood of this situation notwithstanding, the inclusion of Attorney General Manibusan's name and bar number on the Appellee's Brief still suggests that he was involved in the prosecution of a man he previously sentenced. It is this possibility that urges me to write this concurrence.

¶ 80    We have no evidence, in the affirmative or negative, of any ethical screening for this case, as required by basic due process ideals and the Rules of Professional Conduct. Without such evidence, an investigation into a potential violation of the Rules of Professional Conduct is outside the scope of this appeal.

¶ 81    The ethical conflict I highlight is confined only to the appellate level of this case, as the Appellee's Brief is the only location where he is listed as representing the Commonwealth. Furthermore, Appleby has not raised this issue at any stage of litigation. In fact, this topic does not affect the substantive issues raised on appeal. The Attorney General does not appear to have been involved in Appleby's parole revocation hearings in 2020, as there is nothing in the appellate record to suggest that he advised AAG Healer in her representation of the Board of Parole.

¶ 82    This is not the first time in recent history that this Court has noted the Office of the Attorney General's questionable representation. *See CCC v. IPI*, 2023 MP 7 ¶ 33 n.5 ("At oral argument we questioned the Assistant Attorney General about the Office of the Attorney General's seeming omnipresence in this case, but did not receive a satisfactory answer. . . . We note that the varying roles and, at-times, contradictory legal positions the OAG has adopted throughout this case give us pause.").

¶ 83    It is the obligation of the Office of the Attorney General to ensure the record is thoroughly reviewed for any potential conflicts of interest and either receive the necessary informed consent or follow proper screening and notification procedures. MPRC R. 1.12 (a), 1.12 (c). This proactive approach not only preserves the integrity of the legal process but also safeguards against any perceptions of potential impropriety in our justice system.

¶ 84    Other jurisdictions consider any disqualification of former judges closely because it "raises an issue of a lack of prosecutorial impartiality." *United States v. Hasarafally*, 529 F.3d 125, 126 (2d Cir. 2008). This Court, however, has declined to take any substantive action relating to this issue of attorney conflict. I write separately still to acknowledge that this decision stems, in part, from the amorphous details and unclear record of this case. Any law firm or office associated with a former judge or law clerk must carefully screen future cases for compliance with our rules. Such representations may not enjoy a continued presumption of compliance.

/s/
JOHN A. MANGLOÑA
Associate Justice

COUNSEL

Tyler. R. Scott, Assistant Public Defender, Saipan, MP;
Molly Dennert, Assistant Public Defender, Saipan, MP, for Appellant.

Edward Manibusan, Attorney General, Saipan, MP;
J. Robert Glass, Jr., Chief Solicitor, Saipan, MP, for Appellees.

NOTICE

*This slip opinion has not been certified by the Clerk of the Supreme Court for publication in the permanent law reports. Until certified, it is subject to revision or withdrawal. In any event of discrepancies between this slip opinion and the opinion certified for publication, the certified opinion controls. Readers are requested to bring errors to the attention of the Clerk of the Supreme Court, P.O. Box 502165, Saipan, MP 96950; phone (670) 236–9715; or e-mail Supreme.Court@NMIJudiciary.gov.*



E-FILED
CNMI SUPREME COURT
E-filed: Oct 18 2024 05:02PM
Clerk Review: Oct 18 2024 05:02PM
Filing ID: 74789869
Case No.: 2022-SCC-0017-CIV
Judy Aldan



IN THE

# Supreme Court

OF THE

# Commonwealth of the Northern Mariana Islands

---

**SHAWN APPLEBY,**
*Petitioner-Appellant,*

*v.*

**WALLY VILLAGOMEZ, COMMISSIONER, CNMI DEPARTMENT OF CORRECTIONS (DOC), AND RAMON B. CAMACHO, CHAIRMAN, CNMI BOARD OF PAROLE (BOP),**
*Respondents-Appellees.*

---

**Supreme Court No. 2022-SCC-0017-CIV**

**JUDGMENT**

Petitioner-Appellant Shawn Appleby appeals the trial court's decision to grant, in part, his habeas petition. For the reasons discussed in the accompanying opinion, the Court AFFIRMS the order of the trial court and ORDERS the Board of Parole to redetermine Appleby's parole eligibility date.

ENTERED this 18th day of October, 2024.


   /s/
JUDY T. ALDAN
Clerk of the Supreme Court